

FILED
Mar 11 2015, 10:24 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

George M. Plews
Jeffrey D. Claflin
Jonathan P. Emenhiser
Plews Shadley Racher & Braun LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
THE CINCINNATI INSURANCE
COMPANY

Julia Blackwell Gelinas
Maggie L. Smith
Carrie G. Doehrmann
Frost Brown Todd LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| FLM, LLC, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> The Cincinnati Insurance Company, et al., <br> *Appellees-Defendants* | March 11, 2015 <br><br> Court of Appeals Case No. 49A02-1401-PL-17 <br><br> Appeal from the Marion Superior Court <br> The Honorable David J. Dreyer, Judge <br> Case No. 49D10-0501-PL-943 |

**Crone, Judge.**

[1]     In *FLM, LLC v. Cincinnati Ins. Co.*, 24 N.E.3d 444 (Ind. Ct. App. 2014) ("*FLM II*"), we held, among other things, that the commercial general liability ("CGL") policy issued by The Cincinnati Insurance Company ("Cincinnati") provided property damage coverage to the insured, International Recycling Inc.

("IRI"), which went out of business and abandoned 100,000 tons of Chrysler foundry sand on property owned by FLM, LLC ("FLM"), after Chrysler stopped paying IRI for its sand disposal services. Consequently, we reversed the trial court's contrary ruling and remanded with instructions to enter summary judgment in FLM's favor on that issue. Cincinnati now petitions for rehearing, asserting that we also should have addressed whether the property damage was expected or intended by IRI and therefore subject to a coverage exclusion under the policy. We grant Cincinnati's petition to address this issue and affirm our original opinion in all respects.

[2]    As mentioned in *FLM II*,

> The CGL policy states that Cincinnati "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Appellant's App. at 165. The insurance applies to "property damage" only if it "is caused by an 'occurrence' that takes place in the 'coverage territory' " and "occurs during the policy period." *Id*. The policy defines "property damage" in pertinent part as "[p]hysical injury to tangible property, including all resulting loss of use of that property." *Id*. at 175. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id*. The term "accident" is not defined.

*Id*. at 454. Based on Judge Bradford's separate opinion in the first appeal in this case, *FLM, LLC v. Cincinnati Ins. Co.*, 973 N.E.2d 1167 (Ind. Ct. App. 2012) ("*FLM I*"), *trans. denied* (2013), we concluded that the contamination of FLM's property by the abandoned foundry sand was an "accident" and therefore an "occurrence" under the policy. *See FLM II* at 455 ("In other words, 'accident' could just as easily be referring to IRI's actions as to the unintended

consequences of those actions, and this ambiguity must be resolved in favor of coverage.") (quoting *FLM I*, 973 N.E.2d at 1179 (Bradford, J., concurring in result)). Cincinnati does not ask us to reconsider that determination on rehearing.

[3] Instead, Cincinnati directs us to the following coverage exclusion in the policy:

> This insurance does not apply to:
>
> **a. Expected or intended injury**
>> "Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of an insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually expected or intended.

Appellant's App. at 165. Cincinnati argues that "just because an act may fall within the definition of occurrence, that does not mean that it automatically falls outside the 'expected or intended' exclusion/exception." Petition for Reh'g at 2. According to Cincinnati, IRI "made the intentional business decision to breach its contract with [FLM], vacate the property, and abandon the thousands of tons of foundry sand being stored on [FLM's] property. [IRI] did so knowing that this act would violate Indiana law and cause [FLM] to be in non-compliance with IDEM regulations." *Id*. at 3 (citing Appellee's App. at 92-94, 103).[1]

---

[1] The citation refers to Cincinnati's petition to transfer in *FLM I*, which cites an appendix filed in that appeal. Cincinnati does not cite directly to any evidence that was specifically designated to the trial court on summary judgment.

We note that "[i]nterpretation of an insurance policy is a question of law that is appropriate for summary judgment." *Keckler v. Meridian Sec. Ins. Co.*, 967 N.E.2d 18, 22 (Ind. Ct. App. 2012), *trans. denied*. "Generally, when an insurer wishes to rely upon an exclusionary clause in its policy, it is raising an affirmative defense to coverage and it bears the burden of proving its applicability." *Id*. at 23. "If there is an ambiguity in a policy, we construe it strictly against the insurer. This is particularly the case where a policy excludes coverage." *Id*. at 22 (citation and quotation marks omitted). "[A]n exclusion in an insurance policy must clearly and unmistakably bring within its scope the particular act or omission that will give rise to the exclusion in order to be effective, and coverage will not be excluded or destroyed by an exclusion or condition unless such clarity exists." *Id*. at 22-23. A claim that an injury was expected or intended "requires consideration of whether, at the time of the acts causing the injury, the insured expected or intended the injury, an inquiry that generally asks merely whether the injury was accidental." *Gen. Housewares Corp. v. Nat'l Sur. Corp.*, 741 N.E.2d 408, 416 (Ind. Ct. App. 2000) (emphasis, citation, and quotation marks omitted).

FLM observes that we have already determined that the contamination of its property resulting from IRI's abandonment of the foundry sand constituted an "accident" under the policy. FLM also notes that "Chrysler was IRI's sole source of revenue" and asserts that

> Cincinnati does not, and cannot, claim [that] IRI had the means to remove the foundry sand after Chrysler stopped paying but instead chose not to. IRI did not make a "business decision" and it did not

"intentionally" or "deliberately" abandon the foundry sand. Chrysler's refusal to pay forced IRI out of business – there was no "choice" or intentional act for IRI then. And it was only when IRI was unexpectedly forced out of business by Chrysler that the injuries occurred.

Response to Petition for Reh'g at 9.

[6] We find FLM's argument persuasive and therefore conclude as a matter of law that the property damage was not expected or intended by IRI and thus the exclusion does not apply. Subject to this clarification, we affirm our original opinion in all respects.

Baker, J., and Pyle, J., concur.