

FILED

Jan 04 2018, 10:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David F. McNamar
McNamar & Associates, P.C.
Westfield, Indiana

ATTORNEYS FOR APPELLEE

Sally Franklin Zweig
Kristopher N. Kazmierczak
Katz Korin Cunningham, P.C.
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John Pelliccia, M.D., | January 4, 2018 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 49A02-1705-PL-1080 |
| v. | Appeal from the Marion Superior Court |
| Anthem Insurance Companies, Inc., | The Honorable Cynthia Ayers, Judge |
| *Appellee-Defendant.* | Trial Court Cause No. 49D04-1512-PL-41123 |

**Barnes, Judge.**

## Case Summary

[1] Dr. John Pelliccia appeals the trial court's grant of summary judgment in favor of Anthem Insurance Companies, Inc. ("Anthem"). We reverse and remand.

## Issue

The restated issue before us is whether Anthem properly cancelled Dr. Pelliccia's personal health insurance policy for nonpayment of premiums and refused to pay claims incurred by him during the policy's premium payment grace period.

## Facts

In December 2013, Dr. Pelliccia purchased a personal health insurance policy from Anthem to cover him and his wife for the year 2014. The premiums were in the monthly amount of $649.77. Dr. Pelliccia made the first payment of $649.77 on December 27, 2013, and arranged for his premiums to be paid by automatic debit from his bank account. This first premium payment apparently was not recorded by Anthem until January 17, 2014.

Thereafter, Anthem sent Dr. Pelliccia monthly billing invoices. The first such invoice in the record, dated January 29, 2014, listed a due date of February 1, 2014, and requested payment in the amount of $1,299.54, and indicated that such a payment would cover from February 1, 2014 to April 1, 2014. Each subsequent invoice listed the same premium amount due, and indicated that payment of that amount would provide coverage for two months. These invoices remained the same through November 2014.

For some reason, apparently related to Dr. Pelliccia's change of banking institutions, the second premium payment of $649.77 was not made until March 6, 2014. Another such payment was made on March 31, 2014;

subsequent payments were regularly made at the end of each following month, and the last payment was made on December 2, 2014. It seems a total of eleven payments were made for the 2014 policy instead of the required twelve payments.

[6] Each billing invoice stated in part, "Please make your payment within 31 days of the premium due date. Your failure to do so will result in retroactive termination of your policy due to the nonpayment of premium. Your coverage will terminate on the date through which your premiums are paid." Appellant's App. Vol. III p. 164. The insurance policy itself stated, "The Member's coverage will terminate if . . . The Member fails to pay his or her Premium, and the grace period has been exhausted." *Id.* at 92. The policy also provided, "In the case of a termination for non-payment of Premium, and the Member is not receiving Advance Payments of the Premium Tax Credit, the last day of coverage is the last day for which Premium payment is made consistent with existing State laws regarding grace periods." *Id.* The policy contained the following language defining and explaining the "grace period" for payment of premiums:

> If the Subscriber does not pay the full amount of the Premium by the Premium due date, the grace period is triggered. The grace period is an additional period of time during which coverage remains in effect and refers to either the 3-month grace period required for individuals receiving Advance Payments of the Premium Tax Credit (APTC) or for Individuals not receiving the APTC, it refers to any other applicable grace period.

> If the Subscriber does not pay the required premium by the end of the grace period, the Contract is cancelled. The application of the grace period to claims is based on the date of service and not on the date the claim was submitted.

> * * * * *

> If the Subscriber is not receiving an APTC, this Contract has a grace period of 30 days. This means if any Premium payment, except the first, is not paid on or before the date it is due, it may be paid during the grace period. During the grace period, the Contract will stay in force unless prior to the date Premium payment is due You give timely written notice to Us that the Contract is to be cancelled. If you do not make the full Premium payment during the grace period, the Contract will be cancelled on the last day of the grace period. You will be liable to Us for the Premium payment due including those for the grace period. You will also be liable to Us for any claims payments made for services incurred after the grace period.

*Id.* at 94.

On April 5, 2014, Anthem sent Dr. Pelliccia the first of several letters entitled, "Important Information Regarding Your Premiums Notice of Grace Period." Appellant's App. Vol. IV p. 3. It stated in part, "As of the date of this Notice, which is required by Federal Law, our records indicate we have not received your full premium payment." *Id.* It continued:

> You have a 31 day grace period from 4/05/2014 to pay your premium in full in order to avoid cancellation. In addition, full premium payment must be received by the end of the grace period for claims to be paid beyond the last date through which premiums have been paid. If we do not receive your full

premium payment on or before the last day of your grace period, your coverage will be cancelled as explained in your policy. The reason for cancellation will be non-payment of premium and your health status or need for health care services will not be considered. Any partial payment of the total amount due will not be sufficient to remove your coverage from the grace period and prevent cancellation.

\* \* \* \* \*

Anthem will not provide benefits for any services received on or after the date your coverage ends. Any claims paid for services received after coverage ends will be denied and you will be responsible for the charges, unless otherwise required by law.

*Id.* Anthem sent identically-worded letters to Dr. Pelliccia on June 2, July 3, September 2, October 3, and November 3, 2014.

[8] Sometime in the fall of 2014, Dr. Pelliccia discovered that he needed surgery. On November 11, 2014, Anthem preapproved the surgery, which was scheduled for December 10, 2014. The preapproval letter stated in part, "You are covered for this service provided that . . . [t]he premiums have been paid to the date the service is rendered." *Id.* at 43-44.

[9] On December 3, 2014, Anthem sent Dr. Pelliccia a letter that differed from the previous six letters it had sent regarding being behind on his premium payments. This letter was entitled, "You may be in danger of losing your plan coverage." *Id.* at 28. It continued in part:

Did you know your health plan premium is late? Your premium for Medical coverage was due on 12/01/2014. To avoid losing your policy, you should pay the full amount listed right away. **If you have already paid your full premium, you can ignore this letter and don't need to do anything more.**

\* \* \* \* \*

To give you a chance to keep your coverage, you have a 31 day grace period to pay. That period ends on 01/03/2015. If we don't receive your full payment on or before that date, your plan says that your coverage will be cancelled.

**Claims payment during your grace period**

Claims will not be paid during your grace period. The grace period gives you time to bring your coverage up to date, but any medical claims you have during this time will be your responsibility.

*Id.* at 28-29.

[10] Anthem also sent Dr. Pelliccia an invoice on December 5, 2014, indicating that a premium payment of $649.77 was due immediately and would cover the period from December 1, 2014, to January 1, 2015. Anthem then sent Dr. Pelliccia another invoice on December 20, 2014, which listed a premium due date of January 1, 2015, in the amount of $733.00, and that such payment would cover January 1, 2015, to February 1, 2015. It did not indicate that any payment still was due and owing for Dr. Pelliccia's calendar year 2014 coverage.

[11] Dr. Pelliccia underwent his surgery in December 2014 as planned and incurred substantial medical bills. He did not send any premium payments to Anthem in response to the December 3 letter or December 5 invoice, nor did he contact them. On January 9, 2015, Anthem sent Dr. Pelliccia a letter stating in part, "We are sorry to tell you that your Anthem Blue Cross and Blue Shield Medical coverage was cancelled on December 1, 2014 because your premium was not paid." *Id.* at 33. Anthem refused to pay any claims related to Dr. Pelliccia's surgery. It also refused to accept a belated premium payment tendered by Dr. Pelliccia and denied his appeals.

[12] On September 4, 2015, Dr. Pelliccia filed a complaint against Anthem alleging that it had improperly retroactively cancelled his health insurance policy in violation of Indiana law and in bad faith. Dr. Pelliccia subsequently moved for partial summary judgment on the issue of whether Anthem was liable for his December 2014 medical claims.[1] Anthem responded and filed a cross-motion for summary judgment against Dr. Pelliccia on all of his claims. On December 20, 2016, the trial court granted Anthem's motion for summary judgment. Dr. Pelliccia filed a motion to correct error, which the trial court denied on April 25, 2017. Dr. Pelliccia now appeals.

---

[1] The motion indicated that Dr. Pelliccia would leave the bad faith claim for further litigation.

## Analysis

[13] We review a summary judgment ruling de novo. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). We must draw all reasonable inferences in favor of the non-moving party, and summary judgment is appropriate only "'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting Ind. Trial Rule 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences . . . ." *Id.* (citations omitted). Cases that turn upon interpretation of an insurance policy generally are appropriate for summary judgment because they present a question of law. *FLM, LLC v. Cincinnati Ins. Co.*, 27 N.E.3d 1141, 1143 (Ind. Ct. App. 2015), *trans. denied*. The fact that the parties filed cross-motions for summary judgment does not alter the standard of review, and each motion is considered separately to determine whether the moving party is entitled to judgment as a matter of law. *Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012).

[14] Dr. Pelliccia's argument has essentially three components: first, that Anthem could not retroactively terminate his insurance coverage as a matter of Indiana law; second, that it could not do so under the terms of the insurance policy; and third, that Anthem failed to give him adequate notice that it intended to cancel

his policy for nonpayment of premiums.[2]  We conclude that the policy itself did not permit Anthem's conduct in this case and so largely limit our discussion to the policy language.

[15]     Insurance contracts are governed by the same rules of construction as other contracts.  *Bradshaw v. Chandler*, 916 N.E.2d 163, 166 (Ind. 2009).  We interpret policies from the perspective of an ordinary policyholder of average intelligence.  *Id.*  If a policy's terms are unambiguous, we give them their ordinary meaning.  *Id.*  If an ambiguity does exist, meaning reasonably intelligent people could interpret the policy's language differently, we construe the language strictly against the insurer.  *Id.*  This is especially true with respect to a policy's exclusion of coverage.  *Id.*  However, if possible we should harmonize the policy's provisions rather than place them in conflict.  *Id.*

[16]     We strictly construe ambiguous insurance policies against the insurer because of the disparity in bargaining power typical of parties to insurance contracts.  *Id.*  "The insurance companies write the policies; we buy their forms or we do not buy insurance."  *Wagner v. Yates*, 912 N.E.2d 805, 811 (Ind. 2009) (quoting *Am. States Ins. Co. v. Kiger*, 662 N.E.2d 945, 947 (Ind. 1996)).  "Nevertheless, we

---

[2] Dr. Pelliccia also suggests that Anthem was estopped from cancelling his policy when it did because of its past practice of routinely sending notices of cancellation but never actually cancelling.  Anthem contends Dr. Pelliccia waived this argument by not presenting it to the trial court.  We need not resolve whether Dr. Pelliccia waived this argument, and we will not address it.

enforce limits on coverage where the policy unambiguously favors the insurer's interpretation." *Bradshaw*, 916 N.E.2d at 166.

[17] The policy directly addresses the question of when nonpayment of premiums will result in termination of coverage. It states in part, that if the policy is to be terminated because of nonpayment of premiums, "and the Member is not receiving Advance Payments of the Premium Tax Credit,[3] the last day of coverage is the last day for which Premium payment is made consistent with existing State laws regarding grace periods." Appellant's App. Vol. III p. 92. The relevant state law here is found in Indiana Code Section 27-8-5-3(a)(3), which requires every accident and sickness policy issued in Indiana to contain a "grace period" provision stating:

> A grace period of (insert a number not less than "7" for weekly premium policies, "10" for monthly premium policies and "31" for all other policies) days will be granted for the payment of each premium falling due after the first premium, *during which grace period the policy shall continue in force*.

(Emphasis added). There is no Indiana statute or case explaining the phrase "during which period the policy shall continue in force."

[18] Dr. Pelliccia contends the phrase should be construed to mean that the policy remains in effect throughout the grace period and claims incurred during the grace period must be paid, regardless of whether the insured makes a premium

---

[3] Dr. Pelliccia apparently was not receiving such advance payments.

payment during the grace period, which position is supported by a case from Texas. *See First Bankers Ins. Co. v. Newell*, 463 S.W.2d 745, 747 (Tex. Civ. App. 1971), *aff'd*, 471 S.W.2d 795 (Tex. 1971) (addressing statute and policy language nearly identical to Ind. Code § 27-8-5-3(a)(3) and holding, "any loss of the insured occasioned by a sickness originating during the grace period is covered whether or not the premium is paid during the grace period in accordance with the clear language used in the statute and the policy.").

[19] Anthem, on the other hand, argues that the statutory language should be construed to mean that an insured's claims during the grace period will be paid only if the insured does in fact make the belated premium payment during the grace period, citing a case from New York. *See Zaitschek v. Empire Blue Cross & Blue Shield*, 632 N.Y.S.2d 434, 436 (N.Y. Civ. Ct. 1995), *aff'd*, 662 N.Y.S.2d 171 (N.Y. App. Div. 1997) (addressing statute identical to I.C. § 27-8-5-3(a)(3) and holding insurer could deny claims incurred during grace period where insurer never made belated premium payment and stating, "A grace period is not intended as a free bonus month of insurance coverage added to every contract."). Suffice it to say, given the unclear language of the relevant statute, the dearth of authority interpreting the phrase at issue, and the existence of two diametrically opposed interpretations in the scant caselaw that is available, we cannot conclude that the policy's invocation of "existing State laws regarding grace periods" clearly resolves the controversy between Dr. Pelliccia and Anthem.

[20]   On the other hand, we need not definitively weigh in on whether we believe Texas or New York was more correct in interpreting their "grace period" statutes. Our statute, and others listing certain required provisions for accident and sickness insurance policies, clearly are intended to provide certain minimum benefits for insureds. *See* I.C. § 27-8-5-3(a) (stating that statutorily-required insurance policy provisions may be substituted with other terms if the substituted terms are approved by the insurance commissioner and are "no less favorable in any respect to the insured or the beneficiary."). An insurance company would be free to go beyond those minimum benefits. To that end, we believe a plain reading of Anthem's policy here indicates that, even if the New York court's interpretation of the grace period statute was correct, Anthem's policy actually addresses policy termination in a manner consistent with the Texas court and in a way that is more beneficial to insureds.

[21]   The Anthem policy provides for a thirty-day grace period.[4] During the grace period, "coverage remains in effect." Appellant's App. Vol. III p. 94. Crucially, the policy further explains:

> During the grace period, the Contract will stay in force unless prior to the date Premium payment is due You give timely written notice to Us that the Contract is to be cancelled. If you do not make the full Premium payment during the grace period, the Contract *will be cancelled on the last day of the grace period*. You

---

[4] The length of the grace period also seems to go beyond what is required by Indiana law; Dr. Pelliccia was paying his premiums monthly, and in such a case the grace period required by Indiana Code Section 27-8-5-3(a)(3) is ten days.

> will be liable to Us for the Premium payment due including those for the grace period. You will also be liable to Us for any claims payments made for services *incurred after the grace period.*

*Id.* Additionally, "[t]he application of the grace period to claims is based on the date of service and not on the date the claim was submitted." *Id.*

[22] We conclude this language is clear and unambiguous. It provides for policy termination on the *last* day of the grace period in the event a premium payment is missed. Anthem, essentially, wants to be permitted to retroactively terminate a policy effective on the *first* day of the grace period, but there is no language to that effect in the policy.[5] Additionally, the policy expressly requires an insured to reimburse Anthem for claims payments for services incurred *after* the grace period and is silent with respect to claims payments for services incurred *during* the grace period. The reasonable inference to be made is that an insured does not have to reimburse Anthem for any claims payments made for services incurred during the grace period. Furthermore, by clarifying that "[t]he application of the grace period to claims is based on the date of service and not on the date the claim was submitted," the policy implies that claims for services provided during the grace period will be paid and those for services provided after the grace period ended will not be paid. Even if we were to conclude that

---

[5] Arguably, some of the premium payment notices Anthem sent Dr. Pelliccia indicated that it could retroactively cancel his insurance coverage, but those notices were not part of the contract between Anthem and Dr. Pelliccia.

there was any ambiguity in these policy provisions, we would construe them against Anthem as the drafter of the policy.

[23] In sum, Anthem was required to honor its contract to pay Dr. Pelliccia's claims for services provided during the grace period even though he did not make a final premium payment during the grace period. Pursuant to the policy's plain terms, Dr. Pelliccia's coverage terminated on the last day of the grace period, or January 3, 2015. As for Anthem's concern that Dr. Pelliccia received a "free" month of insurance coverage, he directs us to Indiana Code Section 27-8-5-3(b)(7), which states that an insurance company that is owed an unpaid premium and pays a claim for an insured may deduct the amount of the unpaid premium from the claim payment. Anthem has incorporated this statutory provision in its policy, stating, "Upon the payment of a claim under this Contract, any premium due and unpaid . . . may be deducted therefrom." *Id.* at 122. Thus, Anthem may deduct Dr. Pelliccia's unpaid premium amount from any claims it pays for his December 2014 medical expenses.

## Conclusion

[24] The language of Anthem's policy clearly provides that the effective date of the termination of Dr. Pelliccia's health insurance coverage for nonpayment of one premium was January 3, 2015. We reverse the grant of summary judgment in favor of Anthem. Also, we direct that Dr. Pelliccia's motion for partial summary judgment be granted and hold that Anthem was required to abide by its policy with respect to covered medical expenses he incurred before January

3, 2015.  Dr. Pelliccia's bad faith claim against Anthem remains pending.  We reverse in part and remand for further proceedings.

Reversed and remanded.


May, J., and Bradford, J., concur.