## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 20 2019, 8:56 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bryan L. Ciyou
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Crystal G. Rowe
New Albany, Indiana

Erin A. Clancy
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Christopher Alexander d/b/a Crystal Tiger Holdings, LLC,

*Appellant-Plaintiff,*

v.

Djuric Trucking, Inc. and William H. Walden, as Special Representative of the Estate of Mark Phillip Sikorski,

*Appellees-Defendants*

September 20, 2019

Court of Appeals Case No.
19A-CT-366

Appeal from the
Lake Superior Court

The Honorable
John M. Sedia, Judge

Trial Court Cause No.
45D01-1705-CT-106

**Altice, Judge.**

# Case Summary

As Mark Phillip Sikorski was driving a semi tractor-trailer truck in the course and scope of his employment with Djuric Trucking, Inc. (Djuric), he suffered cardiac arrest and the truck left the road and struck a building owned by Christopher Alexander d/b/a Crystal Tiger Holdings, LLC (Alexander). Alexander brought suit against Djuric and William H. Walden as Special Representative or the Estate of Mark Phillip Sikorski (the Estate) alleging, among other things, negligence. Alexander appeals the trial court's entry of summary judgment in favor of Djuric and the Estate (collectively, Djuric Defendants), raising two issues that we consolidate and restate as whether the trial court properly determined that Djuric Defendants were entitled to judgment as a matter of law.

We affirm.

# Facts & Procedural History

At all times relevant to this appeal, Sikorski was a truck driver for Djuric. In November 2014, he underwent a commercial driver fitness examination by a certified medical examiner, as required by Federal Motor Carrier Safety Regulations. After requesting and receiving information from Sikorski regarding his use of a CPAP[1] machine for sleep apnea, the medical examiner determined that Sikorski was physically qualified to operate a commercial

---

[1] CPAP stands for continuous positive airway pressure.

motor vehicle and issued to Sikorski a Medical Examiner's Certificate effective for two years, through November 3, 2016.[2]

[4] Around 12:23 p.m. on May 15, 2015, forty-five-year-old Sikorski was driving a semi-tractor trailer westbound on U.S. Highway 30 near Pierceton, Indiana, when he suffered a cardiac event and either died or lost consciousness. The truck crossed the center line, went over the eastbound lanes, and crashed into a vacant commercial building, which was owned by Alexander, causing property damage. Sikorski was pronounced dead at the scene, but no one else was harmed in the accident. The next day, an autopsy was performed by pathologist Pramod K. Carpenter, M.D., who concluded that the manner of death was "Natural" and the cause of death was "Marked Myocardial Hypertrophy and Coronary Atherosclerosis." *Appellant's Appendix Vol. II* at 42.

[5] On May 12, 2017, Alexander filed a Complaint for Damages alleging that Sikorski was negligent in a number of respects, including the following: he knew or should have known he was suffering from heart problems that resulted in heart failure on May 15, 2015; he should have known that it was medically necessary to obtain medical treatment in the weeks leading up to the heart

---

[2] Under the Federal Motor Carrier Safety Regulations, a person "shall not drive a commercial motor vehicle" without a "medical examiner's certificate that [the person] is physically qualified." 49 C.F.R. § 391.41(a). Specifically, "the medical examiner is required to certify that the driver does not have any physical, mental, or organic condition that might affect the driver's ability to operate a commercial motor vehicle safely." 49 C.F.R. § 391.43(f). A driver is physically qualified if, among other things, he has "no current clinical diagnosis of myocardial infarction, angina pectoris, coronary insufficiency, thrombosis, or any other cardiovascular disease of a variety known to be accompanied by syncope, dyspnea, collapse, or congestive cardiac failure." 49 C.F.R. § 391.41(b)(4).

failure and crash; and he "[f]ailed to follow guidelines related to medical conditions precluding the ability to drive a semi-tractor."[3] *Id.* at 34. Alexander asserted that under respondeat superior Djuric was responsible for any and all actions of Sikorski, including his failure to seek or obtain medical care for chest pain and other signs of heart problems in the weeks before the crash. Alexander also asserted that Djuric was liable under theories of negligent hiring, retention, and supervision of Sikorski. Alexander asserted in his complaint that his building was totally destroyed, and he "has been unable to rebuild or use the building." *Id*. at 36. Djuric Defendants' answer asserted as an affirmative defense, among other things, that the accident "was the result of an unforeseeable sudden emergency that was not of Defendants [sic] own making." *Id*. at 39.

[6]     In October 2018, Djuric Defendants filed a motion for summary judgment asserting that they were entitled to judgment as a matter of law on Alexander's negligence claims because the collision and damages resulted from a sudden medical emergency, i.e., Sikorski's "sudden, unforeseeable heart attack," which Sikorski "did not know and could not have foreseen . . . was likely to occur on the date of the accident."[4] *Appellant's Appendix Vol. II* at 17.

---

[3] Alexander also alleged that Sikorski operated the truck in violation of Federal and Indiana law by driving at an unreasonable speed under the circumstances. However, this does not appear to be at issue in this appeal.

[4] In their motion for summary judgment, Djuric Defendants also asserted that, under Indiana law, "a Plaintiff cannot simultaneously bring claims for vicarious liability and for negligent hiring, retention, and/or supervision against a company when the company has admitted the alleged tortfeasor was acting in the course and scope of his employment at the time of the alleged negligence[,]" and because, here, Djuric

[7]     In support of its summary judgment motion, Djuric Defendants designated the following evidence: Alexander's complaint; Djuric's answer; the autopsy report; the November 2014 Medical Examiner's Certificate; and an affidavit of Sikorski's wife, Terri Sikorski, averring that she spoke to Sikorski by phone about twelve minutes prior to the accident, as he was driving, and he sounded well and in good spirits and he did not complain or indicate that he felt ill, fatigued, or in pain, or that he was experiencing any symptoms of a heart attack. The autopsy report stated that Sikorski was forty-five years old, 6' 2" and weighed 338 pounds, and the report included the following:

ANATOMIC FINDINGS.

1. No acute traumatic cause of death

2. Myocardial hypertrophy (590 grams); marked coronary atherosclerosis with focal 85-90% narrowing

3. Marked pulmonary congestion

4. Compression fracture C4 vertebra with minimal hemorrhage

---

admitted that Sikorski was driving in the course and scope of his employment, Sikorski's claims for negligent hiring/retention/supervision are barred. *Id*. at 17, 29. Alexander appears to not dispute this proposition on appeal, stating, "The Djuric Defendants have admitted that Sikorski was in the course and scope of his employment, leaving the issue as one of negligence against the Estate and negligence against Djuric under a respondeat superior theory." *Appellant's Brief* at 6.

5. Deep laceration to right forehead and minor abrasions to face, chest, shoulders, arm, hands, and left lower leg with minimal hemorrhage

6. Sleep apnea, history

7. Obesity (BMI= 43.4)

8. Moderate hepatosteatosis

*Appellant's Appendix Vol. II* at 42.

[8]     Alexander timely filed a Response in opposition to the motion for summary judgment, asserting that Sikorski crashed into the building "because of [his] heart failure stemming from medical conditions [he] knew about since 2007" and that the sudden medical emergency defense was not available where the person knew or should have known about the condition. *Id*. at 51. Alexander argued that Sikorski's known medical conditions were a "ticking time bomb" that Sikorski could have prevented with proper care. *Id*. at 56. Alexander asserted that genuine issues of material fact precluded summary judgment and that, even if the sudden medical emergency doctrine was available as a defense, it was a fact determination for the jury. In support of his opposition to summary judgment, Alexander designated the following evidence: the Affidavit of David M. Fletcher, M.D.; VA medical records; Sikorski's employment application; his death certificate; and the autopsy report.

[9]     Particularly relevant to this appeal is the Affidavit of Dr. Fletcher, who Alexander retained "to render opinions concerning the medical [commercial driver's license] qualifications of and the foreseeability of Mark Sikorski's . . . acute health issue that occurred on May 15, 2015 that resulted in him crashing into a building." *Id*. at 63. Dr. Fletcher is board certified in occupational and environmental medicine, and he is a Certified Medical Review Officer, with his practice including medical certification for commercial motor vehicle drivers, referred to as DOT medical examinations. Dr. Fletcher performs an average of 1000 DOT physicals per year, and he averred that he is "intimately familiar with the regulatory requirements for medical certification for commercial motor vehicle drivers under the Federal motor carrier safety regulations, as well as FMCSA guidelines for determining fitness for driving." *Id*. at 62. Dr. Fletcher identified materials that he reviewed and relied upon, which included industry regulations, various scientific, research, and reference materials, and documents related specifically to Sikorski including: Djuric's driver qualification and personnel files on Sikorski; Sikorski's DOT medical exams for the years 2012-2014; and VA medical records.

[10]    Dr. Fletcher averred that Sikorski "was erroneously given a two-year certification in November 2014 by [the medical examiner] when he was being treated for [obstructive sleep apnea]." *Id*. at 78. Dr. Fletcher also stated that Djuric violated federal regulations by allowing Sikorski to drive without providing documentation that his obstructive sleep apnea was controlled and

that Djuric should have independently monitored Sikorski's health conditions regardless of Sikorski's medical certificate.

[11] Referring to certain published research, Dr. Fletcher stated that having three of thirteen concomitant medical conditions would put an individual at a statistically elevated risk of crash and merited additional scrutiny during medical certification exams and that Sikorski had the following three conditions: obstructive sleep apnea, hypertension, and a BMI greater than 35. Dr. Fletcher also said that Sikorski, as part of his licensing and training, was required to learn the physical requirements to be fit for duty to drive a commercial vehicle and, at each DOT exam, Sikorski would have been reminded of these requirements as they are written on the DOT medical examination forms.

[12] Dr. Fletcher's Affidavit included the following opinions:

> IT IS MY OPINION TO A REASONABLE DEGREE OF MEDICAL CERTAINTY THAT THE SUDDEN CARDIAC ARREST AND LOSS OF CONSCIOUSNESS THAT OCCURRED ON MAY 15, 2015 WAS FORSEEABLE.
>
> The cause of Mr. Sikorski's death was due to sudden cardiac arrest due to his underlying cardiovascular disease that had not been properly evaluated and treated before he drove on May 15, 2015.
>
> * * *

This fatal cardiac event was foreseeable and the prevention of such an episode is why commercial vehicle safety regulations are in place to prevent these high-risk drivers from being on the road.

Mr. Sikorski's cardiovascular condition disqualified him from operating a commercial vehicle. Mr. Sikorski had several medical conditions, when unmanaged individually and collectively contributed to his sudden incapacitation that was foreseeable.

A person with a current clinical diagnosis of a cardiovascular disease of a variety known to be accompanied by syncope, dyspnea, collapse, or congestive cardiac failure is not physically qualified to drive a commercial motor vehicle according to industry standards and regulations cited in 4 CFR 391.41(b)(4).

\* \* \*

According to co-workers, Mr. Sikorski had classic signs of angina related to his severe untreated heart disease, but Mr. Sikorski ignored the recommendation to seek medical treatment.

\* \* \*

If Sikorski had sought treatment as recommended, this accident could have been prevented.

\* \* \*

MR. SIKORSKI KNEW OR SHOULD HAVE KNOWN NOT TO OPERATE A COMMERCIAL VEHICLE DUE TO THE RISK OF A SIGNIFICANT CARDIAC EVENT.

*Appellant's Appendix Vol. II* at 70-72, 74 (capitalization in original).

[13] Djuric Defendants filed a Reply, arguing that Alexander failed to designate any admissible evidence to establish the existence of a genuine issue of material fact and that "the only admissible evidence" designated by Alexander was Sikorski's employment application, death certificate, and autopsy report, "and none of this evidence creates a genuine issue of material fact as to the dispositive issue in this case, which is: Whether Mark Sikorski knew or could have foreseen that he would sustain a sudden medical emergency, that being heart failure, on May 15, 2015 while operating his vehicle, such that he should have pulled over or not driven at all that day in order to prevent an accident." *Id.* at 93.

[14] Along with its Reply, Djuric Defendants filed a Motion to Strike, which asked the trial court to strike certain evidence that Alexander had designated in support of its Response and Opposition to Summary Judgment, namely Dr. Fletcher's Affidavit and the VA records. With regard to the Affidavit, Alexander asserted that it "references and cites to numerous exhibits, including records" that "are not attached to his affidavit or authenticated in any way." *Id.* at 104-05. Further, Djuric Defendants argued that the Affidavit "contains numerous inadmissible factual statements relating to Sikorski's medical history of CPAP compliance, obstructive sleep apnea, hypertension, obesity, COPD, and smoking" that should be stricken "because they are irrelevant and/or constitute hearsay[.]" *Id.* at 105-06. Similarly, they argued that the Affidavit's statement that, according to the coroner's report, Sikorski had been complaining of chest pain to co-workers constitutes hearsay and is inadmissible

pursuant to Ind. Evidence Rule 802. Also, Djuric Defendants asserted that "numerous . . . opinions relating to Sikorski's health and the foreseeability of Sikorski's sudden cardiac arrest" and "pure legal conclusions" were not admissible under Evid. Rules 702, 703, or 704(b). *Id*. at 108, 111.

[15] Djuric Defendants also moved to strike VA records that Alexander had designated. The records were from November 2007, January 2009, and February 2014. Djuric Defendants argued that the records (1) were not authenticated as required by Evid. R. 901, (2) contained inadmissible hearsay, and (3) were "completely irrelevant to whether Sikorski knew or could have foreseen he would sustain heart failure while operating his vehicle on May 15, 2015." *Id*. at 112. Alexander filed an objection to Djuric Defendants' Motion to Strike, maintaining, among other things, that under Evid. R 703, "[e]xperts may testify to opinions based on inadmissible evidence, provided that it is of the type reasonably relied upon by experts in the field."

[16] On January 24, 2019, the trial court held a hearing on pending matters, including Djuric Defendants' Motion for Summary Judgment and their Motion to Strike. The following day, the trial court issued an Order granting Djuric Defendants' request to strike Dr. Fletcher's Affidavit[5] and granting summary judgment in favor of Djuric Defendants. The court began its Order by observing:

---

[5] The Order does not expressly rule on Djuric Defendants' request to strike Exhibit 2, the VA records.

The issue before this Court cannot be better stated than by the Restatement (Second) of Torts, Section 283(C):

> [A]n automobile driver who suddenly and quite unexpectedly suffers a heart attack does not become negligent when he loses control of his car and drives it in a manner which would otherwise be unreasonable; *but one who knows that he is subject to such attacks may be negligent for driving at all*.

*Appellant's Appendix Vol. II* at 10 (emphasis added). The court found that Djuric Defendants had met their initial burden to demonstrate that Sikorski was medically qualified to operate a semi-tractor trailer that day and not negligent, as he possessed a valid Medical Examiner's Certificate on the day in question and suddenly suffered a heart attack. The trial court explained that the burden thus shifted to Alexander to come forward with evidence to show that Sikorski knew that he was "subject to such attacks and was negligent for driving at all." *Id.* (quoting Section 283(C)). Alexander sought to do so with, primarily, Dr. Fletcher's Affidavit, which the trial court struck in its entirety, finding:

> None of the documents attached to Fletcher's Affidavit are verified or authenticated pursuant to IRE 901 and are not self authenticated pursuant to IRE 902. He cannot rely upon them in the manner that they are attached to his Affidavit because they would be inadmissible into evidence as hearsay. Moreover, the opinions the Affidavit proffers are so rife with legal conclusions regarding legal duty, foreseeability, and causation contrary to IRE 704(3) that they cannot be considered by the Court.

*Id.* at 11.  Concluding that "[t]here is no designated evidence that would establish a genuine issue of material fact that [Sikorski] was ' . . . negligent for driving at all[,]'" the court entered judgment in favor of Djuric Defendants.  *Id.* Alexander now appeals.

## Discussion & Decision

[17]    Alexander asserts that the trial court erred when it granted summary judgment in favor of Djuric Defendants.  The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which can be determined as a matter of law.  *Denson v. Estate of Dillard*, 116 N.E.3d 535, 539 (Ind. Ct. App. 2018).  The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Id.*  If the moving party meets its burden, the burden then shifts to the nonmoving party whose response must set forth specific facts indicating that there is an issue of material fact.  *Id.*  Any doubts as to any facts or inferences to be drawn from those facts must be resolved in favor of the nonmoving party.  *Id.*  A fact is "material" if its resolution would affect the outcome of the case, and an issue is "genuine" if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences.  *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009).

[18]    We review a summary judgment ruling de novo.  *Pelliccia v. Anthem Ins. Cos.*, 90 N.E.3d 1226, 1230 (Ind. Ct. App. 2018).  A trial court's findings and

conclusions offer insight into the rationale for the court's judgment and facilitate appellate review but are not binding on this court. *Denson*, 116 N.E.3d at 539. Moreover, we are not constrained to the claims and arguments presented to the trial court, and we may affirm a summary judgment ruling on any theory supported by the designated evidence. *Id*. The party that lost in the trial court has the burden of persuading us that the trial court erred. *Id*.

[19] Here, Alexander's claims against the Estate and Djuric are based on Sikorski's alleged negligence in driving the truck on the day in question. To prevail on a negligence claim, a plaintiff must establish three elements: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by the breach of that duty. *Ryan v. TCI Architects/Eng'rs/Contractors, Inc.*, 72 N.E.3d 908, 913 (Ind. 2017). A defendant may obtain summary judgment in a negligence action when the undisputed facts negate at least one element of the plaintiff's claim. *Denson*, 116 N.E.3d at 539. Although the question of breach is usually one for the trier of fact, where the relevant facts are undisputed and lead to but a single inference or conclusion, the court as a matter of law may determine whether a breach of duty has occurred. *Id.* (citing *Cox v. Paul*, 828 N.E.2d 907, 911 (Ind. 2005) and *King v. Ne. Sec., Inc.*, 790 N.E.2d 474, 484 (Ind. 2003)).

[20] It is well settled that "[w]hen considering breach of the duty of care, we begin with the venerable legal concept of the 'reasonable person,'" under which an actor must conform his conduct to that of a reasonable person under like

circumstances. *Denson*, 116 N.E.3d at 539 (some internal quotations omitted) (citing Restatement (Second) of Torts § 283 (1965)). Section 283(C) of the Restatement explains that if "the actor is ill or otherwise physically disabled, the standard of conduct to which he [or she] must conform to avoid being negligent is that of a reasonable [person] under like disability." As the trial court in this case recognized, Comment c to Section 283(C) provides the following illustration:

> [A]n automobile driver who suddenly and quite unexpectedly suffers a heart attack does not become negligent when he loses control of his car and drives it in a manner which would otherwise be unreasonable; but one who knows that he is subject to such attacks may be negligent for driving at all.

[21] In *Denson v. Estate of Dillard* this court encountered a similar fact pattern as that of the present case and applied the above-cited principles. In that case, the plaintiff, Denson, was a passenger in a vehicle when the driver, Dillard, had a heart attack and died or lost consciousness, such that the vehicle veered off the road and crashed into a home. Denson was severely injured and brought suit against Dillard's estate, alleging negligence, and the estate moved for summary judgment, claiming that Dillard's sudden loss of consciousness or medical emergency negated the breach element of Denson's negligence claim. The trial court entered judgment for the estate, and Denson appealed.

[22] Applying Section 283(C) to those facts, the *Denson* court found:

> Here, the Estate presented prima facie evidence that Dillard suddenly suffered a heart attack and lost consciousness before

losing control of the car and crashing. Because we determine as a matter of law that Dillard cannot be found to have acted unreasonably after he suffered the attack and was rendered unconscious, *the issue becomes whether Dillard acted unreasonably in deciding to drive in the first place.* That is to say, *the question is whether Dillard's sudden physical incapacity was reasonably foreseeable such that a reasonably prudent person in his position would not have risked driving.*

116 N.E.2d at 541 (emphasis added). The designated evidence showed that Dillard had suffered a prior heart attack about six weeks before the accident, was prescribed home health care and, upon completing recovery goals, was released without restriction on his driving. His follow-up appointments indicated he was doing well. Denson urged that Dillard's prescribed medication for his heart and his prior heart attack would have put him on notice that he suffered from coronary artery disease, but the *Denson* court rejected that, stating,

> [T]his evidence does not equate to knowledge of peril or create an inference that a reasonable man in Dillard's position would have altered his behavior regarding driving. This is especially true in light of the undisputed lack of driving restrictions or warnings not to drive by trained medical personnel. Moreover, there is no evidence that Dillard suffered any symptoms prior to his decision to drive on November 20, which would have alerted him of the impending physical incapacity

*Id*. at 542. Finding that the estate had made a prima facie showing that Dillard's sudden physical incapacity was not reasonably foreseeable – and, therefore, the Estate met its burden as summary judgment movant to

affirmatively negate the element of breach on Denson's negligence claim – and finding that the evidence designated by Denson was insufficient to create a genuine issue of material fact, the *Denson* court affirmed the trial court's grant of summary judgment in favor of the estate.[6]

[23] We find that *Denson*'s reasoning is applicable to the present case. Here, in seeking summary judgment, Djuric Defendants submitted evidence that (1) Sikorski possessed a valid Medical Examiner's Certificate that found him medically qualified to drive his commercial truck, (2) he suffered a cardiac event as he was driving for Djuric on May 15, 2015, and (3) he spoke by phone to his wife about ten minutes prior and at that time he did not indicate he was experiencing any symptoms of feeling ill or in pain. On this record, we, like the trial court, find that Djuric Defendants met their initial burden to show the

---

[6] In its decision, the *Denson* court distinguished the sudden emergency doctrine from sudden medical emergency:

> [T]he sudden emergency doctrine is an application of the general requirement that one's conduct conform to the standard of a reasonable person. . . . The doctrine was developed by the courts to recognize that a person confronted with sudden or unexpected circumstances calling for immediate action is not expected to exercise the judgment of one acting under normal circumstances. . . .[U]nlike the sudden emergency doctrine, the issue with sudden medical emergency is not whether the defendant responded reasonably to an emergency situation, but whether a reasonable person in the defendant's position would have altered his conduct before the medical emergency occurred based on knowledge of peril.

116 N.E.3d at 540 n.2. The *Denson* court recognized that in *Holcomb v. Miller*, 149 Ind. App. 46, 50, 269 N.E.2d 885, 888 (1971) the court "acknowledged the status of sudden loss of consciousness while driving as an affirmative defense to a negligence action," but found that *Holcomb* did not constitute "a formal adoption of the specific affirmative defense to negligence." *Id*. at n.3. The *Denson* court explained, "We see no need to formally recognize a specific doctrine or defense and think that the application of general negligence principles adequately addresses the situation at hand." *Id*. at 540. We agree.

absence of a genuine issue of material fact as to Sikorski's alleged negligence. The burden thus shifted to Alexander to show that a genuine issue of material fact remained for trial.

[24] In opposition to Djuric Defendants' motion for summary judgment, Alexander designated, as is relevant here, the Affidavit of Dr. Fletcher. However, the trial court struck the Affidavit, finding that "[n]one of the documents attached to Fletcher's Affidavit[7] are verified or authenticated . . . and are not self authenticated" and that Dr. Fletcher "cannot rely upon them in the manner that they are attached to his Affidavit because they would be inadmissible into evidence as hearsay" and that the Affidavit was "so rife with legal conclusions of legal duty, foreseeability, and causation contrary to [Evid. R.] 704(b)" that it could not be considered by the trial court. *Appellant's Appendix Vol. II* at 12. Alexander asserts on appeal that the trial court erred when it struck Dr. Fletcher's twenty-page Affidavit in its entirety.

[25] We review a trial court's decision on a motion to strike for an abuse of discretion. *Halterman v. Adams Cty. Bd. of Comm'rs*, 991 N.E.2d 987, 989 (Ind. Ct. App. 2013). We will reverse only when the decision is clearly against the logic and effect of the facts and circumstances. *Id.* Generally, "[i]n order to be used in a summary judgment proceeding, an affidavit must set forth such facts as would be admissible in evidence." Ind. Trial Rule 56(E); *Merrill v. Knauf*

---

[7] Dr. Fletcher's Affidavit did not have any attachments or exhibits, although Alexander separately designated some VA medical records.

*Fiber Glass GmbH*, 771 N.E.2d 1258, 1264 (Ind. Ct. App. 2002), *trans. denied*. However, with regard to expert affidavits submitted at the summary judgment stage, our courts have recognized:

> An expert witness must have sufficient facts or data on which to form an opinion. *Burp v. State*, 612 N.E.2d 169, 172 (Ind. Ct. App. 1993). . . . Experts may testify to opinions based on inadmissible evidence if it is of the type reasonably relied on by experts in the field. *Bunch v. Tiwari*, 711 N.E.2d 844, 848 (Ind. Ct. App. 1999). An expert witness "need not base her opinion on personal knowledge if the opinion is based on evidence of a type normally found reliable and customarily relied upon by others in the witness's profession or area of expertise." *Id*. at 849.

*Halterman*, 991 N.E.2d at 990-91.

Here, in seeking to strike Dr. Fletcher's Affidavit, Djuric Defendants asserted, in part: (1) it was impermissible for Dr. Fletcher to review and rely on Sikorski's prior medical records because they contained hearsay and were not authenticated, and (2) Dr. Fletcher's statements and opinions regarding Sikorski's health, including his sleep apnea, compliance with use of CPAP machine, hypertension, obesity, and smoking were irrelevant. We agree with Alexander, however, that Dr. Fletcher, in reaching his opinions, could review and rely on Sikorski's medical records and that Dr. Fletcher's opinions as to the condition of Sikorski's health were not irrelevant. Ind. Evid. Rules 702, 703; *see also Halterman*, 991 N.E.2d at 990 (upholding trial court's denial of motion to strike and stating "an expert's affidavit may be based on medical records"). We thus find it was an abuse of discretion to strike the Affidavit in its entirety.

[27] We next address the other basis upon which Djuric Defendants sought to strike the Affidavit, namely that it contained impermissible legal conclusions. Evid. R. 704(b) permits an expert's opinions to embrace ultimate issues to be decided by the trier of fact, but it prohibits opinions as to legal conclusions, such as the existence of a duty. *See*, *Merrill,* 771 N.E.2d at 1264 (expert not permitted to testify in affidavit that defendant owed plaintiff a duty as such determination is a legal conclusion that invades province of court). In this case, the trial court determined that the Affidavit was "so rife with legal conclusions of legal duty, foreseeability, and causation contrary to [Evid. R.] 704(b)" that it could not be considered by the trial court. *Appellant's Appendix Vol. II* at 12. Alexander urges on appeal that Dr. Fletcher's Affidavit did not contain impermissible legal conclusions. Upon review of the Affidavit, we cannot agree.

[28] We find that the Affidavit contains opinions throughout, and stated in various forms, that the sudden cardiac arrest and loss of consciousness "was foreseeable," "this foreseeable acute cardiac event caused the [] collision," and Sikorski "knew or should have known not to operate a commercial vehicle due to the risk of a significant cardiac event." *Id*. at 70-71, 74-75. We agree with Djuric Defendants that "[w]ith these 'foreseeability' opinions, Dr. Fletcher is attempting to elucidate what duty, if any, was required by Sikorski and/or Djuric Trucking]"and "directly relate to the legal conclusion of whether Sikorski had a duty not to drive a commercial vehicle on the date and time of the accident." *Appellees' Brief* at 29-30. We find these opinions exceeded the bounds of Evid. Rule 704(b).

[29] The question before us thus becomes whether, when excluding the impermissible legal conclusions in the Affidavit, Alexander met his burden to show the existence of a genuine issue of material fact for trial. We conclude that he has not. That is, even if we agree with Alexander (via Dr. Fletcher's Affidavit) that, based on Sikorski's cardiac profile, he was statistically at an elevated risk for sudden death due to cardiac disease, and he had three out of thirteen medical conditions that put him at a statistically higher risk of a vehicle crash – and even if, as Dr. Fletcher opines, Sikorski "was not medically fit to drive commercially at the time of the crash" and "he was erroneously given a two-year certification" – none of those matters create a genuine issue of material fact as to whether Sikorski should have known not to drive on the day and time in question and breached a duty by driving. *Appellant's Appendix Vol. II* at 75, 78.

[30] Rather, Sikorski held a valid medical examiner's certificate to drive commercially through November 3, 2016. There is no evidence that anyone, including his employer or a medical professional, told Sikorski not to drive. He had never had a heart attack and he was not prescribed or taking any heart medication. He did not note any pain or illness when his wife spoke to him minutes before the accident. He drove a truck for a living and did not have any specialized medical knowledge. Although Sikorski was not in good health, suffering from hypertension, sleep apnea and cardiac disease, we find that "this evidence does not equate to knowledge of peril or create an inference that a reasonable man in [Sikorski]'s position would have altered his behavior

regarding driving." *Denson*, 116 N.E.3 at 542. That is, we do not find that "a reasonably prudent person in his position would not have risked driving." *Id*. at 541. Absent negligence on the part of Sikorski, Djuric may not be found liable under the respondeat superior doctrine. Based on the record before us, we find that summary judgment in favor of Djuric Defendants was proper.

[31] Judgment affirmed.

Kirsch, J. and Vaidik, C.J., concur.