

**FILED**

Dec 18 2018, 8:35 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Katherine Karres
Hensley Legal Group, PC
Indianapolis, Indiana

ATTORNEY FOR AMICUS CURIAE
INDIANA TRIAL LAWYERS
ASSOCIATION

Edward B. Mulligan V
Cohen & Malad, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
THE ESTATE OF DELMER
DILLARD

Grover B. Davis
James T. Flanigan
Susan J. McGinty
McClure McClure & Davis
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Wanda Denson, *Appellant-Plaintiff,* <br><br> v. <br><br> The Estate of Delmer Dillard and Indiana Farmers Mutual Insurance Company, <br> *Appellees-Defendants* | December 18, 2018 <br><br> Court of Appeals Case No. 18A-CT-1112 <br><br> Appeal from the Johnson Superior Court <br><br> The Honorable Kevin M. Barton, Judge <br><br> Trial Court Cause No. 41D01-1705-CT-64 |

**Crone, Judge.**

# Case Summary

Wanda Denson was severely injured when Delmer Dillard had a heart attack and lost consciousness while driving a vehicle in which Denson was a passenger. Dillard ran the vehicle off the road and struck a home. Dillard died. Denson filed a negligence claim against Dillard's estate ("the Estate") as well as an underinsured motorist claim against her automobile insurer, Indiana Farmers Mutual Insurance Company ("the Insurance Company"). The Estate subsequently moved for summary judgment, claiming that Dillard's sudden loss of consciousness or medical emergency negated the element of breach on Denson's negligence claim. Following a hearing, the trial court entered summary judgment in favor of the Estate. Denson appeals that ruling, claiming that the trial court erred. Under the narrow and specific circumstances presented here, we conclude that the designated evidence negates the element of breach, and we therefore affirm the trial court's entry of summary judgment in favor of the Estate.

# Facts and Procedural History

On November 20, 2016, Dillard was driving a vehicle in which Denson was a passenger. They were traveling to Bloomington to celebrate Thanksgiving. While driving westbound on State Road 252 near Morgantown, Dillard suddenly declared that he was not feeling well and immediately slumped over and passed out. Because Dillard's foot was on the accelerator when he passed out, the vehicle sped up, went off the left side of the road, and crashed into a house. Dillard died. Denson suffered severe injuries, including fractures to her

back, a fractured sternum, broken ribs, and a broken left arm. Her medical expenses exceeded $404,997.99. It was determined that Dillard had suffered a massive heart attack while driving and that his cause of death was "Hemopericardium Due to Ruptured Myocardial Infarction[.]" Appellant's App. Vol. 2 at 220.

[3] Medical records indicate that approximately six weeks prior to the accident, on October 7, Dillard went to the Johnson Memorial Hospital emergency room after experiencing chest pain the night before that had extended into the morning. He was later admitted to the hospital and diagnosed as having suffered a "subacute inferior ST segment elevation myocardial infarction [heart attack]" on October 5 or 6, 2016. *Id.* at 64. A cardiac nuclear stress test performed in the hospital revealed "a fixed inferior defect with normal ejection fractions." *Id.*

[4] Dillard was discharged from the hospital on October 11, 2016. When discharged, Dillard was prescribed home health care. He was given a prescription form dated October 9, 2016, signed by his attending physician, Ali T. Abedali, M.D., that provided: "Not driving for recovery to be completed." *Id.* at 155.

[5] Dillard had a follow-up appointment with Dr. Abedali on October 13, 2016. At that time, Dillard was doing well, had no chest or epigastric pain, and had no palpitations, fainting, dizziness, confusion, or headaches. He had normal heart sounds, no heart murmurs, and a normal heart rate. Dr. Abedali did not advise

Dillard that he could not drive or operate a motor vehicle. Dr. Abedali's decision to place no restrictions on Dillard's driving was based upon a review of Dillard's hospital records, cardiologist notes, stress test, and functional capacity. A follow-up appointment was scheduled for December 2016.

[6] Dillard had a cardiology appointment with Ibed U. Ansari, M.D., on November 11, 2016. Dr. Ansari's notes indicate that Dillard was doing well and denied having "any recurrence of chest pain, shortness of breath, palpitation or dizziness." *Id*. at 175. The notes provided, "Will follow up in 3 months." *Id*. at 180.

[7] Dillard was released from home health care on November 16, 2016. The discharge summary listed the type of discharge as a "complete" discharge and gave the reason as "GOALS MET." *Id*. at 203. The notes further provided, "[Patient] NOW BACK TO BASELINE STATUS, [Patient] IS NOW DRIVING SELF TO CHURCH AND MD APPTS." *Id*. Accordingly, specifically regarding transportation, the notes provided, "No assistance needed in this area." *Id*. at 206. Dillard's fatal heart attack and vehicle accident occurred four days later.

[8] Approximately five months after the accident and Dillard's death, Denson filed a negligence complaint against the Estate. Her complaint also sought uninsured/underinsured motorist benefits from her own automobile insurer, the Insurance Company. The Estate filed an answer asserting as a defense to negligence that Dillard was faced with a sudden medical emergency which was

so imminent as to leave no time for deliberation or action. Denson filed a motion to strike the defense, which was converted to a motion for partial summary judgment. That same day, the Estate also filed a motion for summary judgment. A hearing was held on all pending motions on March 13, 2018. Thereafter, the trial court entered an extensive order with detailed findings of fact and conclusions thereon granting summary judgment in favor of the Estate.[1] Specifically, the trial court concluded that the Estate successfully negated the element of breach on Denson's negligence claim. This appeal ensued.

## Discussion and Decision

[9] "The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which can be determined as a matter of law." *Lamb v. Mid Ind. Serv. Co.*, 19 N.E.3d 792, 793 (Ind. Ct. App. 2014). "The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Mint Mgmt., LLC v. City of Richmond*, 69 N.E.3d 561, 564 (Ind. Ct. App. 2017). If the moving party meets its burden, "the burden then shifts to the nonmoving party whose response must set forth specific facts indicating that there is an issue of material fact." *Venture Enter., Inc. v. Ardsley*

---

[1] The trial court also granted Denson's motion to strike insofar as it sought to strike any reliance by the Estate on the sudden emergency doctrine. Neither party challenges that ruling. As explained in footnote two, the sudden emergency doctrine is distinct from the sudden loss of consciousness/medical emergency defense relied on by the Estate in support of summary judgment and is not applicable here.

*Distrib., Inc.*, 669 N.E.2d 1029, 1032 (Ind. Ct. App. 1996). Any doubts as to any facts or inferences to be drawn from those facts must be resolved in favor of the nonmoving party. *Mint Mgmt.*, 69 N.E.3d at 564.

[10] "We review a summary judgment ruling de novo." *Pelliccia v. Anthem Ins. Cos.*, 90 N.E.3d 1226, 1230 (Ind. Ct. App. 2018). A trial court's findings and conclusions offer insight into the rationale for the court's judgment and facilitate appellate review but are not binding on this Court. *Henderson v. Reid Hosp. & Healthcare Servs.*, 17 N.E.3d 311, 315 (Ind. Ct. App. 2014), *trans. denied* (2015). Moreover, we are not constrained to the claims and arguments presented to the trial court, and we may affirm a summary judgment ruling on any theory supported by the designated evidence. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). Cross-motions for summary judgment do not alter this standard or change our analysis. *Erie Indem. Co. v. Estate of Harris*, 99 N.E.3d 625, 629 (Ind. 2018). The party that lost in the trial court has the burden of persuading us that the trial court erred. *Estate of Hofgesang v. Hansford*, 714 N.E.2d 1213, 1216 (Ind. Ct. App. 1999).

[11] To prevail on a negligence claim, a plaintiff must establish three elements: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by the breach of that duty. *Ryan v. TCI Architects/Eng'rs/Contractors, Inc.*, 72 N.E.3d 908, 913 (Ind. 2017). A defendant may obtain summary judgment in a negligence action when the undisputed facts negate at least one element of the plaintiff's claim. *Pelak v. Ind. Indus.*

*Servs., Inc.*, 831 N.E.2d 765, 769 (Ind. Ct. App. 2005), *trans. denied* (2006). Negligence cannot be inferred from the mere fact of an accident. *Id*. Rather, all the elements of negligence must be supported by specific facts designated to the trial court or reasonable inferences that might be drawn from those facts. *Id*. An inference is not reasonable when it rests on no more than speculation or conjecture. *Id*.

[12] The trial court here concluded that the Estate successfully negated the element of breach on Denson's negligence claim. Although the question of breach is usually one for the trier of fact, *Cox v. Paul,* 828 N.E.2d 907, 911 (Ind. 2005), where the relevant facts are undisputed and lead to but a single inference or conclusion, the court as a matter of law may determine whether a breach of duty has occurred. *King v. Ne. Sec., Inc.*, 790 N.E.2d 474, 484 (Ind. 2003). With respect to the element of breach, the parties and the amicus curiae put considerable effort into debating whether Indiana should formally recognize a "sudden medical emergency" or "sudden loss of consciousness" affirmative defense[2] that has been adopted in several jurisdictions and provides that a

---

[2] Denson confuses and conflates the Estate's claim of sudden medical emergency with our already well-established sudden emergency doctrine, which can be explained as follows:

sudden loss of consciousness while driving is a complete defense to an action based in negligence if such medical emergency or loss of consciousness was not foreseeable. *See Roman v. Estate of Gobbo*, 791 N.E.2d 422, 428 (Ohio 2003) (noting that at least thirty-six states, including Indiana,[3] recognize such defense). We see no need to formally recognize a specific doctrine or defense and think that the application of general negligence principles adequately addresses the situation at hand.

---

> In a negligence cause of action, the sudden emergency doctrine is an application of the general requirement that one's conduct conform to the standard of a reasonable person. The emergency is simply one of the circumstances to be considered in forming a judgment about an actor's fault. The doctrine was developed by the courts to recognize that a person confronted with sudden or unexpected circumstances calling for immediate action is not expected to exercise the judgment of one acting under normal circumstances. The basis of the doctrine is that the actor is left no time for adequate thought, or is reasonably so disturbed or excited that the actor cannot weigh alternative courses of action, and must make a speedy decision, based very largely upon impulse or guess. Under such conditions, the actor cannot reasonably be held to the same accuracy of judgment or conduct as one who has had full opportunity to reflect, even though it later appears that the actor made the wrong decision, one which no reasonable person could possibly have made after due deliberation. In Indiana, a defendant seeking a sudden emergency instruction must show that three factual prerequisites have been satisfied: 1) the defendant must not have created or brought about the emergency through his own negligence; 2) the danger or peril confronting the defendant must appear to be so imminent as to leave no time for deliberation; and 3) the defendant's apprehension of the peril must itself be reasonable.

*Willis v. Westerfield*, 839 N.E.2d 1179, 1184-85 (Ind. 2006) (citations and quotation marks omitted). The sudden emergency doctrine is not an affirmative defense. *Id*. "Rather, it 'defines the conduct to be expected of a prudent person in an emergency situation.'" *Id*. (quoting *Brooks v. Friedman*, 769 N.E.2d 696, 699 (Ind. Ct. App. 2002), *trans. denied*). As we explain more fully below, unlike the sudden emergency doctrine, the issue with sudden medical emergency is not whether the defendant responded reasonably to an emergency situation, but whether a reasonable person in the defendant's position would have altered his conduct before the medical emergency occurred based on knowledge of peril. *See, e.g.*, RESTATEMENT (SECOND) OF TORTS § 283(C), cmt. c (1965).

[3] The *Roman* court cites *Holcomb v. Miller*, 149 Ind. App. 46, 50, 269 N.E.2d 885, 888 (1971), in which this Court acknowledged the status of sudden loss of consciousness while driving as an affirmative defense to a negligence action. However, *Holcomb* provides minimal background, explanation, or detail as to the reasoning for, or parameters of, such a defense. We do not think that *Holcomb* constitutes a formal adoption of the specific affirmative defense to negligence as has occurred in other jurisdictions, and we decline to expand *Holcomb* further.

[13]    When considering breach of the duty of care, we always begin with the "venerable legal concept of the 'reasonable person.'" *Key v. Hamilton*, 963 N.E.2d 573, 579 (Ind. Ct. App. 2012), *trans. denied*. It is well settled that to avoid being negligent, an actor must conform his conduct to that of a reasonable person under like circumstances. RESTATEMENT (SECOND) OF TORTS § 283 (1965). Section 283(C) of the Restatement explains that if "the actor is ill or otherwise physically disabled, the standard of conduct to which he [or she] must conform to avoid being negligent is that of a reasonable [person] under like disability." In other words, a person under a temporary or permanent disability "may be required, under particular circumstances, to take more precautions than one who is not so disabled, while under other circumstances he may be required to take less." *Id.*, cmt. c. Thus, "an automobile driver who suddenly and quite unexpectedly suffers a heart attack does not become negligent when he loses control of his car and drives it in a manner which would otherwise be unreasonable; but one who knows that he is subject to such attacks may be negligent for driving at all." *Id.*

[14]    Here, the Estate presented prima facie evidence that Dillard suddenly suffered a heart attack and lost consciousness before losing control of the car and crashing.[4] Because we determine as a matter of law that Dillard cannot be

---

[4] Denson and the amicus curiae briefly suggest that the Estate failed to make a prima facie showing that Dillard's loss of consciousness was so sudden after his heart attack that he could not have avoided the accident. *See Holcomb*, 149 N.E.2d at 50, 269 N.E.2d at 888 (driver has burden to show by preponderance of evidence that attack occurred "under such circumstances as to preclude [him] from taking reasonable precautions whether by pulling to the side of the street to await passage of the dizziness or faint spell, or otherwise."). We disagree. In fact, the evidence designated by both parties supports only the single

found to have acted unreasonably after he suffered the attack and was rendered unconscious, the issue becomes whether Dillard acted unreasonably in deciding to drive in the first place. That is to say, the question is whether Dillard's sudden physical incapacity was reasonably foreseeable such that a reasonably prudent person in his position would not have risked driving. We agree with the trial court that the Estate made a prima facie case on this issue and that the evidence designated by Denson fails to create a genuine issue of material fact.

[15] As a general matter, an actor "is required to recognize that his conduct involves risk of causing an invasion of another's interest if a reasonable man would do so while exercising (a) such attention, perception of the circumstances, memory, knowledge of other pertinent matters, intelligence, and judgment as a reasonable man would have …." RESTATEMENT (SECOND) OF TORTS § 289 (1965). Moreover, "in order for an act or an omission to constitute negligence, a person to be charged must have knowledge or notice that such act or omission involved danger to another." *State v. Totty*, 423 N.E.2d 637, 644 (Ind. Ct. App. 1981) (citation omitted). Indeed, "the foundation of liability is knowledge or what is deemed in law to be the same thing, namely, the opportunity by the exercise of reasonable diligence to acquire knowledge of peril." *Id*.

---

reasonable inference that Dillard's heart attack and loss of consciousness occurred almost simultaneously and so suddenly as to leave no time for meaningful deliberation. *See* Appellant's App. Vol. 2 at 235 (deposition of Wanda Denson).

[16] Regarding Dillard's knowledge of peril, the designated evidence shows that Dillard suffered a prior heart attack on October 5 or 6, 2016, and was hospitalized. He was prescribed home health care upon his discharge from the hospital, but the recovery goals were met and he was completely released from home health care as of November 16, 2016, without any restriction placed on his driving.[5] In fact, the home health care notes indicate that, prior to his release, Dillard had already been driving himself to church and doctor appointments. Dillard attended appointments with his attending physician on October 13, 2016, and with his cardiologist on November 11, 2016. The medical notes from those appointments reported no abnormalities in Dillard's heart and indicated that he was doing well. Dillard's attending physician averred that he did not advise Dillard that he could not operate a motor vehicle and that this specific lack of driving restriction "was based on review of his hospital records, cardiologist notes throughout his hospital stay, and review of his stress test, as well as his functional capacity." Appellant's App. Vol. 2 at 65.

[17] While Denson designated evidence that shows that Dillard was prescribed medication for his heart, and that his prior heart attack would have put him on notice that he suffered from coronary artery disease, this evidence does not equate to knowledge of peril or create an inference that a reasonable man in

---

[5] While there is conflicting evidence regarding whether Dillard was under a driving restriction immediately upon his discharge from the hospital, the undisputed evidence demonstrates that any such restriction was no longer in place as of the date of the accident.

Dillard's position would have altered his behavior regarding driving.[6] This is especially true in light of the undisputed lack of driving restrictions or warnings not to drive by trained medical personnel. Moreover, there is no evidence that Dillard suffered any symptoms prior to his decision to drive on November 20, which would have alerted him of the impending physical incapacity.[7]

[18] In sum, the Estate made a prima facie showing that Dillard's sudden physical incapacity was not reasonably foreseeable, and therefore, under the narrow circumstances presented, the Estate met its burden as summary judgment movant to affirmatively negate the element of breach on Denson's negligence claim. The burden then shifted to Denson to come forward with contrary evidence requiring resolution by a trier of fact. *See Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The evidence designated by Denson is insufficient to

---

[6] Denson submitted expert medical testimony which broadly stated that "[g]iven his medical history on November 20, 2016[,] before the incident in question, Delmer Dillard was at a significantly increased risk of future cardiac events." Appellant's App. Vol. 2 at 231. This is a far cry from evidence that Dillard knew or had reason to believe that he was at imminent risk for an attack and should not have been driving.

[7] The only evidence as to Dillard's physical condition and state of mind on the date of the accident comes from Denson's deposition testimony, which provides in relevant part as follows:

> Q: Before [Dillard] said, I'm not feeling well, did he give any indication that he was not feeling well?
> A: No.
> Q: When you left the house that day did he say he was not feeling good?
> A: No.
> Q: Did he seem normal to you?
> A: He looked like he was all right to me.

Appellant's App. Vol. 2 at 235. Although Denson suggests that a jury could still infer that Dillard was perhaps not feeling well on the day of the accident before he started to drive, such inference would be unreasonable, as it would be based on nothing more than speculation and conjecture. *See Pelak*, 831 N.E.2d at 769.

create a genuine issue. We therefore affirm the trial court's grant of summary judgment in the Estate's favor.[8]

[19] Affirmed.

Najam, J., and Pyle, J., concur.

---

[8] The amicus curiae expresses concern that a decision in favor of the Estate unfairly shifts the financial burden of these types of accidents onto "unsuspecting, innocent, and harmed plaintiffs." Amicus Br. at 12. Specifically, in addition to being unable to recover from the Estate, there is a risk that Denson will be unable to recover from the Insurance Company under her own uninsured/underinsured motorist policy due to "the lack of an at-fault party." *Id*. While we sympathize with Denson and similarly situated plaintiffs, this case is not about insurance coverage.