ATTORNEYS FOR APPELLANT
SPEEDY WRECKER SERVICE, LLC

Michael L. Carmin
Daniel M. Cyr
CarminParker, P.C.
Bloomington, Indiana

ATTORNEY FOR APPELLANT
JEANNE WALTERS REAL ESTATE, LLC

Christine L. Bartlett
Ferguson Law
Bloomington, Indiana

ATTORNEY FOR APPELLEE

Thomas M. Frohman
Bloomington, Indiana



FILED
Apr 29 2020, 9:26 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Speedy Wrecker Service, LLC, and Jeanne Walters Real Estate, LLC, *Appellants-Defendants,*<br><br>v.<br><br>Daniel H. Frohman, *Appellee-Plaintiff,* | April 29, 2020<br><br>Court of Appeals Case No. 19A-CT-2033<br><br>Appeal from the Monroe Circuit Court<br><br>The Honorable Elizabeth A. Cure, Judge<br><br>Trial Court Cause No. 53C01-1806-CT-1262 |

**Robb, Judge.**

# Case Summary and Issue

[1] Daniel H. Frohman sued Speedy Wrecker Service, LLC ("Speedy Wrecker") and Jeanne Walters Real Estate, LLC ("JW Realty") (collectively, when appropriate, "Appellants") for towing his car from a private, permit-only parking lot within twenty-four hours of finding it parked there. The parties each filed a motion for summary judgment. The trial court denied the Appellants' motion and partially granted Frohman's motion, finding the Appellants violated Indiana statutes related to removing vehicles abandoned on private property. The Appellants appeal, raising two issues of which we find the following dispositive: whether in granting partial summary judgment to Frohman the trial court erred in its interpretation of the relevant statutes. Concluding the relevant statutes entitle the Appellants to summary judgment rather than Frohman, we reverse and remand.

# Facts and Procedural History

[2] JW Realty manages a permit-only parking lot located on private property[1] in downtown Bloomington, Indiana. The property used to be home to a bank, and the building still exists, although it is no longer in use. In March or April of 2017, JW Realty spoke to nearby business owners and placed flyers on vehicles parked in the lot informing them that parking was soon going to be restricted to

---

[1] JW Realty does not own the property; it manages the parking lot on behalf of the owner.

permit holders only and providing information about obtaining a permit. Signage advising "Parking by Lease. Permit Parking" was installed in the parking lot. Appellants' Appendix, Volume 2 at 92. "Tow Warning" signs were also installed. The "Tow Warning" signs state:

> **Courtesy notice**
> Permit parking only. Lot will be patrolled 24/7
> Permits available for $53/month with auto monthly ACH draft
> Call Jeanne Walters Real Estate 812.xxx.xxxx

*Id.* at 94. Those who purchased monthly permits were assigned a specific parking space. *See id.* at 128-66 (Parking Space Lease Agreements).

[3] In May 2017, JW Realty hired Speedy Wrecker to patrol the lot and tow unauthorized vehicles. Pursuant to the contract, Speedy Wrecker was authorized to tow "all unauthorized, abandoned or trespassing vehicles" regardless of the hour of the day, the day of the week, how long the vehicle has been in the lot, or the number of other vehicles in the parking lot. *Id.* at 121. According to a representative of JW Realty, "The parking lot is only for individuals and businesses with permits to park their vehicles" and Speedy Wrecker is authorized to tow a vehicle "[a]ny time when there is a vehicle parked in the parking lot without a permit." *Id.* at 85-86. Speedy Wrecker does not give vehicle owners a warning before towing a vehicle.

[4] On Saturday, April 14, 2018, Frohman parked his vehicle in JW Realty's lot around 4:00 p.m. to attend an appointment nearby. There were no other vehicles in the parking lot. He averred that he saw no signs indicating that he

was not permitted to park there, either at the entrance to the lot or at the spot where he parked. When Frohman returned to the parking lot approximately an hour later, his car was gone. Walking around the parking lot, Frohman saw several signs in the grass and one sign in the bank's drive up window regarding parking restrictions. After calling the number on the parking lot signage, Frohman learned that Speedy Wrecker had towed his vehicle at 4:11 p.m., and he went to Speedy Wrecker's storage facility at approximately 7:00 p.m. to retrieve his car. It cost him $240 cash.

[5] Frohman filed a complaint for conversion against the Appellants, alleging they exerted unauthorized control over his car by unlawfully taking it from the parking lot without giving him twenty-four hours' notice as required by statute. Frohman requested treble damages, costs, and attorney fees. Frohman also sought an award of punitive damages to deter the Appellants from their allegedly unlawful behavior in towing cars without twenty-four-hour notice. Speedy Wrecker filed a motion for summary judgment in which JW Realty later joined. Frohman filed a response and a cross-motion for summary judgment in his favor. The trial court held a hearing—which has not been transcribed—and issued its Order on Motions for Summary Judgment on July 16, 2019. Finding the Appellants "ignored all parts of the abandoned-vehicle statutes except those that fit best with [Speedy Wrecker's] business interest and was easiest for [JW Realty] as well[,]" the order denied Appellants' motion, granted Frohman's motion on the issue of liability, and set an evidentiary hearing on the remaining issues in Frohman's complaint. Appealed Order at 3.

Appellants sought and obtained both trial court certification of the order and permission from the Court of Appeals to pursue this interlocutory appeal.

# Discussion and Decision

## I. Summary Judgment Standard of Review

[6] When reviewing the grant or denial of summary judgment, we apply the same test as the trial court: summary judgment is appropriate only if the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Sedam v. 2JR Pizza Enters., LLC*, 84 N.E.3d 1174, 1176 (Ind. 2017). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party bears the initial burden of showing the absence of any genuine issue of material fact as to a determinative issue. *Id.*

[7] Our review is limited to those facts designated to the trial court, T.R. 56(H), and we construe all facts and reasonable inferences drawn from those facts in favor of the non-moving party, *Meredith v. Pence*, 984 N.E.2d 1213, 1218 (Ind. 2013). Because we review a summary judgment ruling de novo, a trial court's findings and conclusions offer insight into the rationale for the court's judgment and facilitate appellate review but are not binding on this court. *Denson v. Estate of Dillard*, 116 N.E.3d 535, 539 (Ind. Ct. App. 2018). Additionally, we are not

constrained by the claims and arguments presented to the trial court, and we may affirm a summary judgment ruling on any theory supported by the designated evidence. *Id.* The fact that the parties have filed cross-motions for summary judgment does not alter this standard of review or change our analysis: the party that lost in the trial court has the burden of persuading us that the trial court erred. *Id.*

## II. Removing Abandoned Vehicles

[8] The parties and the trial court all relied on the following two statutes concerning abandoned vehicles:

> (a) A person who finds a vehicle believed to be abandoned on private property that the person owns or controls, including rental property, may:
>
> \* \* \*
>
> (2) personally arrange for the removal of the vehicle by complying with subsection (b) and section 16 of this chapter.
>
> (b) If the person wishes to personally arrange for the removal of the vehicle, the person shall attach in a prominent place a notice tag containing the following information:
>
> (1) The date, time, name, and address of the person who owns or controls the private property and a telephone number to contact for information.
>
> (2) That the vehicle is considered abandoned.

(3) That the vehicle will be removed after twenty-four (24) hours.

(4) That the person who owns the vehicle will be held responsible for all costs incidental to the removal, storage, and disposal of the vehicle.

(5) That the person who owns the vehicle may avoid costs by removal of the vehicle or parts within twenty-four (24) hours.

Ind. Code § 9-22-1-15.

(a) If after twenty-four (24) hours the person who owns a vehicle believed to be abandoned on private property has not removed the vehicle from the private property, the person who owns or controls the private property on which the vehicle is believed to be abandoned may have the vehicle towed from the private property.

(b) Notwithstanding subsection (a), *in an emergency situation* a vehicle believed to be abandoned on private property *may be removed immediately*.  As used in this subsection, "emergency situation" means that the presence of the vehicle believed to be abandoned *interferes physically with the conduct of normal business operations* of the person who owns or controls the private property or poses a threat to the safety or security of persons or property, or both.

Ind. Code § 9-22-1-16 (emphasis added).  It is undisputed that the Appellants did not place a notice tag on Frohman's vehicle and did not wait twenty-four hours thereafter before having the vehicle towed.  The parties dispute only whether, as a matter of law, the situation presented by Frohman parking his

unpermitted car in a permit-only parking lot constitutes an "emergency situation" allowing Appellants to remove the vehicle immediately.

[9]     Statutory interpretation presents a pure question of law for which summary judgment is particularly appropriate. *Ramirez v. Wilson*, 901 N.E.2d 1, 2 (Ind. Ct. App. 2009), *trans. denied*. Here, the parties dispute the proper interpretation of "emergency situation." Frohman argued to the trial court (and to an extent, to this court) that the word emergency in Indiana Code section 9-22-1-16(b) should be given its plain, ordinary, and usual meaning. *See* Appellants' App., Vol. 2 at 237-38 (Frohman's Memorandum in Opposition to Speedy Wrecker['s] Motion for Summary Judgment and In Support of [Frohman's] Motion for Summary Judgment citing Indiana Code section 1-1-4-1 regarding statutory construction and Merriam Webster's definition of emergency); *see also* Appellee's Brief at 13 (citing Indiana Code section 1-1-4-1). However, we only use a term's plain and ordinary meaning in the absence of a precise legislative definition. *Med. & Prof'l Collection Servs., Inc. v. Bush*, 734 N.E.2d 626, 629 (Ind. Ct. App. 2000). Here, the statute itself defines "emergency situation." Where the General Assembly provides a definition for a word or phrase used in a statute, the court is bound by that definition, even if it conflicts with the common meaning ascribed to the word. *Rush v. Elkhart Cty. Plan Comm'n*, 698 N.E.2d 1211, 1215 (Ind. Ct. App. 1998), *trans. denied*. The goal in interpreting a statute is to determine and give effect to the intent of the legislature. *State v. Int'l Business Machines Corp.*, 964 N.E.2d 206, 209 (Ind. 2012). Thus, we look only to the legislative definition of "emergency situation."

[10]     Relevant to the circumstances of this case, an "emergency situation" for purposes of allowing an abandoned vehicle to be removed immediately "means that the presence of the vehicle believed to be abandoned interferes physically with the conduct of normal business operations of the person who owns or controls the private property[.]" Ind. Code § 9-22-1-16(b).[2] The "normal business operations" of JW Realty, at least at this location, were to operate a parking lot for which they sold permits and received a monthly fee. Whether or not there were parking spots available when Frohman parked there and whether or not permits had been sold for all the spots, Frohman's vehicle was physically interfering with those normal business operations by using the parking lot without having purchased a permit. It therefore presented an emergency situation entitling JW Realty to act to immediately remove the vehicle.

[11]     The trial court found that the Appellants "have interpreted the statute in such a manner as to effectively render §9-22-1-15 and, §9-22-1-16 meaningless." Appealed Order at 2. But Frohman and the trial court have interpreted those statutes to render the *exception* meaningless. The exception protects normal business operations on private property. If the owner or operator of a for-pay parking lot cannot invoke the emergency exception when an unauthorized car parks in the lot, then essentially, there is no such business as a for-pay parking lot. Under Frohman's interpretation of the statutes, anyone could park in the

---

[2] The alternative, that the abandoned vehicle "poses a threat to the safety or security of persons or property," is not at issue here. Ind. Code § 9-22-1-16(b).

parking lot with impunity as long as they moved their car within twenty-four hours and there would be no incentive to purchase a permit and thus no business for JW Realty to operate. Is it frustrating to see an empty parking lot in a convenient location but be forced to find a different spot because it is permit only? Of course. Is it fair to expect to park for free in a parking lot for which others have paid for a permit because you intend to park for only a short time or because it appears plenty of parking spots are available? Of course not. And that is what the emergency exception protects.

[12] We hold, as a matter of law, that the emergency exception applies here. As the parties have not identified any genuine issues of material fact to be resolved,[3] the Appellants are entitled to judgment as a matter of law because their act of removing Frohman's vehicle from the parking lot was allowed by statute and therefore did not constitute conversion. We therefore remand to the trial court to vacate the partial summary judgment entered for Frohman, vacate the

---

[3] Although the Appellants designated evidence that the lot had signage declaring the lot permit only and warning that violators would be towed, Frohman designated evidence that he did not see signage that the lot was permit only until after his car was towed. Regardless, the applicable statutes do not require signage and this point of contention is therefore not a genuine issue of material fact because its resolution would not affect the outcome of the case.

Of note, effective July 1, 2019, Indiana Code chapter 24-14-4 allows the establishment of and requirements for a tow-away zone on commercial private property. Indiana Code section 24-14-4-2(a) requires the posting of a tow-away zone sign that is conspicuous and clearly visible to the public. However, "[a] commercial private property owner may have a motor vehicle towed from the owner's commercial private property without first displaying signage concerning the tow-away zone *if the motor vehicle is removed under IC 9-22-1-16.*" Ind. Code § 24-14-4-2(b) (emphasis added). Thus, this newly enacted statute makes it clear that signage is not a requirement for removal under the circumstances herein.

evidentiary hearing regarding Frohman's damages as he has sustained none, and enter final judgment for the Appellants.

# Conclusion

[13] The trial court erred in granting partial summary judgment to Frohman and denying summary judgment to the Appellants. We therefore reverse the judgment of the trial court and remand with instructions to enter summary judgment for the Appellants.

[14] Reversed and remanded.

Bradford, C.J., and Altice, J., concur.