

**FILED**

Dec 21 2020, 8:40 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer F. Perry
Clark Quinn Moses Scott & Grahn, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Charles E. Oswald
Lisa M. Adler
Harrison & Moberly, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Julianne Solomon,
*as Personal Representative of the Estate of Paul J. Martin, Deceased*,

*Appellant-Defendant,*

v.

Lia Lindsey,

*Appellee-Plaintiff,*

December 21, 2020

Court of Appeals Case No.
20A-PL-822

Appeal from the Marion Superior Court

The Honorable Steven R. Eichholtz, Judge

Trial Court Cause No.
49D08-1811-PL-44725

**Robb, Judge.**

# Case Summary and Issue

[1] Julianne Solomon, as personal representative of the Estate of Paul J. Martin ("Solomon PR" when referred to in that capacity), appeals the trial court's grant of summary judgment to Lia Lindsey concerning the rightful owner of the proceeds from an investment account held by Martin and Lindsey as joint tenants with rights of survivorship. Concluding the proceeds belong to Lindsey as the surviving joint account owner as a matter of law, we affirm summary judgment in her favor.

# Facts and Procedural History

[2] In 1998, Paul Martin invested $50,000 in U.S. Money Market funds with Rydex Series Trust ("Rydex"). The account application listed Paul J. Martin as owner and his daughter, Lia J. Lindsey, as joint owner and provided that "[j]oint accounts will be registered as 'joint tenants with right of survivorship' unless otherwise specified." Appendix of Appellant, Volume 2 at 25. Lindsey did not contribute any funds to the account. Both Martin and Lindsey signed the application. In 2011 or 2012, the Rydex account was retitled as a Guggenheim Investments ("Guggenheim") account. The account was at all times owned by "Paul J. Martin or Lia J. Lindsey" as joint tenants with right of survivorship and that is the registration reflected on all account statements in the record. *See id.* at 74, 76, 78-79.

On Friday, July 6, 2018, Solomon, Martin's wife, initiated a call with Guggenheim during which she requested that all funds in the joint account be withdrawn and the account closed. Solomon did most of the talking, but Martin did indicate his assent to the request and gave his permission for Solomon to speak on his behalf. At the conclusion of the call, the Guggenheim representative who handled the transaction gave Solomon a confirmation number to confirm that "we did the actual redemption." Supplemental Conventional Appendix of Appellant, Volume 2 at 2 (07-06-18 – Martin-Solomon Part #4 (audio recording) at 2:38-2:41). On Monday, July 9, Martin died. Also on July 9, Guggenheim issued a check to "Paul J. Martin or Lia J. Lindsey" in the amount of $351,878.68. App. of Appellant, Vol. 2 at 27. Per Martin's request, the check was overnighted to his address.

After Martin's death, Solomon was appointed personal representative of his estate. On August 20, Solomon PR cashed the check, endorsing it with "Est. of Paul J. Martin, Decd[;] Deposit Only" and signing it with the designation "EXTRX." *Id.* at 28. She deposited the check in a separate estate account. On October 8, Lindsey contacted Guggenheim and learned for the first time about Martin's request and the check.

Lindsey filed a Verified Complaint to Recover Property Transfer, naming Solomon in both her individual and representative capacities as defendants and seeking recovery of the $351,878.68. After Solomon PR filed an answer, Lindsey filed a motion for summary judgment, alleging that "Lindsey is the [s]urviving [p]arty to the [j]oint [a]ccount and the proceeds are hers by

operation of law." *Id.* at 43. Lindsey's designated evidence included the affidavit of Alison Santay, a director in the Shareholder Reporting and Oversight group of MUFG Investor Services, LLC ("MUFG"). MUFG provides administrative services to the Rydex Series Trust and uses the brand name Guggenheim Investments for some services. Santay averred:

- In 1998, MUFG established the joint account in question pursuant to the Martin/Lindsey application. The account was established and titled in the names of "Paul J. Martin or Lia J. Lindsey" as joint tenants with rights of survivorship and the titling was never changed.
- On July 6, 2018, MUFG received instructions to liquidate the joint account and issued a check on July 9, 2018 made payable to "Paul J. Martin or Lia J. Lindsey."
- "On July 10, 2018, the cash in the amount of [$351,878.68] remained deposited in a check redemption account."

*Id.* at 78-79.

[6]   Solomon PR replied to Lindsey's motion for summary judgment and filed a motion for summary judgment of her own.[1] Her designated evidence included Lindsey's interrogatory answers indicating she had deposited no funds into the

---

[1] Earlier in the litigation, Solomon filed a motion for summary judgment in her individual capacity which was denied by the trial court. *See* App. of Appellant, Vol. 2 at 7-8. Although the litigation between Lindsey and Solomon, individually, appears to be ongoing, this appeal is an interlocutory appeal of right pursuant to Indiana Appellate Rule 14(A)(1), as the trial court's order directs Solomon PR to immediately distribute the proceeds of the Guggenheim account to Lindsey.

joint account and had withdrawn none and Solomon's affidavit in which she attested that she "understood clearly that . . . Martin's intentions were to liquidate and close the former joint account and, furthermore, that his intentions were to utilize the funds that were formerly in the account to acquire a new marital residence . . . that would be more comfortable for him as he was in failing health." *Id.* at 172. Solomon PR also designated a supplemental affidavit from Santay. This supplemental affidavit added the following information to her previous affidavit:

- On July 6, 2018, after receiving instructions from Martin, the mutual funds in the joint account were redeemed and a transaction confirmation was generated showing a zero account balance on that date. Attached as Exhibit 3 to the Supplemental Affidavit was a Transaction Confirmation for the joint account dated July 6, 2018 showing a redemption of "US Gov Money Market – MM" in the amount of $351,878.68 on that date. App. of Appellant, Vol. 3 at 8.

- On July 9, 2018, the redemption transaction was settled and cash was moved into a check redemption account in the name of MUFG that is used to make distributions after the settlement of redemption transactions.

- A check drawn on the redemption account was issued on July 9, 2018 payable to "Paul J. Martin or Lia J. Lindsey" and sent to Martin per his instructions.

- On July 10, 2018, the funds remained in the check redemption account.

- Attached as Exhibit 5 to the Supplemental Affidavit was a copy of a letter issued to Solomon on August 7, 2018 regarding three accounts Martin had with Guggenheim. With regard to the joint account, the letter stated the "above-referenced account is closed." With regard to the other two accounts (one registered to "Christine C Martin or Paul J Martin" and one registered to "Paul J Martin or Julianne Solomon"), the letter stated the "above-referenced account is registered as a Joint account. In the event of a Joint owner's death, the interest passes to the surviving owner." *Id.* at 11-12.

- The funds remained in the check redemption account until August 20, 2018.

*Id.* at 3-4.

[7] Lindsey replied to Solomon PR's motion for summary judgment and, in addition to the evidence previously designated in support of her own motion, designated Exhibit 1, a Shareholder Confirmation from Rydex for the joint account dated 2/07/00 with a hand-written note on it, and her own affidavit attesting that the handwriting on Exhibit 1 is Martin's. The note read, in part, "Keep in mind you have access to this $ anytime you want it. . . . Love you, Me." *Id.* at 26.

Following a hearing,[2] the trial court entered an order granting summary judgment to Lindsey and directing that "the proceeds of [$351,878.68] be immediately distributed by [Solomon PR] to Plaintiff Lia Lindsey." Appealed Order at 5. The trial court based its decision on the fact that Martin did not follow the statutory procedure to close a joint account and therefore "on the date of his death Mr. Martin had cash in joint account with Lia Lindsey . . . [that] belonged to [her] as the surviving joint account owner." *Id.* at 4. Solomon now appeals.

# Discussion and Decision

## I. Standard of Review

When reviewing the grant or denial of summary judgment, we apply the same test as the trial court: summary judgment is appropriate only if the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Sedam v. 2JR Pizza Enters., LLC*, 84 N.E.3d 1174, 1176 (Ind. 2017). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party bears the

---

[2] Solomon PR did not request that this hearing be transcribed.

initial burden of showing the absence of any genuine issue of material fact as to a determinative issue. *Lawson v. Lafayette Home Hosp. Inc.*, 760 N.E.2d 1126, 1128 (Ind. Ct. App. 2002), *trans. denied*. If the moving party meets that burden, the burden shifts to the non-moving party to set forth facts showing the existence of a genuine issue for trial. *Id.*

[10] Our review is limited to those facts designated to the trial court, T.R. 56(H), and we construe all facts and reasonable inferences drawn from those facts in favor of the non-moving party, *Meredith v. Pence*, 984 N.E.2d 1213, 1218 (Ind. 2013). Because we review a summary judgment ruling de novo, a trial court's findings and conclusions offer insight into the rationale for the court's judgment and facilitate appellate review but are not binding on this court. *Denson v. Estate of Dillard*, 116 N.E.3d 535, 539 (Ind. Ct. App. 2018). Additionally, we are not constrained by the claims and arguments presented to the trial court, and we may affirm a summary judgment ruling on any theory supported by the designated evidence. *Id.* The fact that the parties have filed cross-motions for summary judgment does not alter this standard of review or change our analysis: the party that lost in the trial court has the burden of persuading us that the trial court erred. *Id.*

## II. Joint Accounts

### A. Choice of Law

[11] Solomon PR begins by claiming the trial court erred in applying Indiana law to this case. She argues that Guggenheim accounts are located in Maryland and

therefore Maryland law applies. *See* Amended Brief of Appellant at 11.[3] Other than that bald assertion, however, she makes no cogent argument for applying Maryland law.[4] The argument that Maryland law should be applied to settle this dispute is therefore waived. *See* Ind. Appellate Rule 46(A)(8)(a).

[12] Waiver notwithstanding, the courts of the state in which a suit is pending decide choice of law questions. *Schaffert by Schaffert v. Jackson Nat'l Life Ins. Co.*, 687 N.E.2d 230, 232 (Ind. Ct. App. 1997), *trans. denied*. Generally, the choice of law for contract and tort cases is the law of the place where the breach or wrong took place or the place with the most contacts. *Hubbard Mfg. Co., Inc. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind. 1987). In this case, that is Indiana. When the joint account was opened, Martin lived in Indiana. Account statements were mailed to his address in Indiana. The call to withdraw funds and close the account originated from Indiana, and the check representing the funds in the account was mailed to Indiana. Solomon PR opened Martin's estate in Indiana and cashed the check as his personal representative. The only

---

[3] Solomon PR also argues Delaware law should apply, as the Account Application states that all accounts "are governed by the law of the State of Delaware." App. of Appellant, Vol. 2 at 25. However, Solomon PR failed to advance an argument before the trial court that Delaware law should apply, at least in the pleadings provided in the record on appeal, and any such argument is therefore waived. *Perkins v. Fillio*, 119 N.E.3d 1106, 1114 (Ind. Ct. App. 2019) (holding party waived on appeal an argument for reversal of summary judgment that had never been presented to the trial court). Moreover, the choice of law provision in the account documents is applicable to disputes between the account holders and the bank, not necessarily to disputes between the account holders themselves.

[4] The trial court noted Solomon PR's argument about choice of law but determined that the result would be the same under Maryland or Indiana law. Appealed Order at 2 n.1. And Solomon PR seems to concede the same, at least in part, as she states in her brief that "[u]nder Maryland law, like Delaware and, as discussed below, Indiana, [Martin] had the right to withdraw all the funds in the Joint Account[,]" Amended Br. of Appellant at 11, and points to no distinctions between the law of the two states as to other issues.

contact with Maryland is that administrative tasks concerning the account originated there. Indiana law is applicable to this dispute.

## B. Right of Survivorship in the Joint Account

[13] The trial court determined that Martin did not properly close the joint account and therefore, sums remained on deposit at the time of his death in the form of the check and Lindsey was entitled to those funds as the surviving joint account owner. Solomon PR contends the trial court erred in granting summary judgment to Lindsey because Martin "lawfully withdrew the funds from the Joint Account before he died, and there was no right of survivorship in the check issued by Guggenheim or in the Check Redemption Account on which it was drawn." Amended Br. of Appellant at 8. Issues involving the ownership of joint accounts, both during life and after death, are controlled by Indiana Code chapter 32-17-11 (formerly Indiana Code chapter 32-4-1.5, recodified effective July 1, 2002). A "joint account" is defined as "an account payable on request to one (1) or more of two (2) or more parties whether or not mention is made of any right of survivorship." Ind. Code § 32-17-11-4.[5]

[14] Indiana Code section 32-17-11-18(a) ("section 18") defines ownership of a joint account when one account holder dies. Section 18(a) states that "[s]ums remaining on deposit at the death of a party to a joint account belong to the

---

[5] In turn, an "account" is defined as "a contract of deposit of funds between a depositor and a financial institution[,]" including a "checking account, savings account, certificate of deposit, share account, and other like arrangement." Ind. Code § 32-17-11-1.

surviving party . . . as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created." This section creates a presumption that a survivor to a joint account is the intended recipient of the proceeds in the account. *In re Estate of Banko*, 622 N.E.2d 476, 480 (Ind. 1993). To defeat the survivorship presumption, a challenger must present clear and convincing evidence that at the time of the account's creation, the decedent did not intend the surviving joint account holder to receive the proceeds or that the original intent of the decedent for the joint account holder to receive the proceeds changed before death and was communicated in writing to the financial institution. *Id.*

[15] The facts of this case are virtually identical to those in *Graves v. Kelly*, 625 N.E.2d 493 (Ind. Ct. App. 1993). In *Graves*, Marie McGinness used her funds to open a joint account with the right of survivorship with her son, Chester Graves, and they signed a joint-tenant agreement. Several years later, on March 17, 1992, McGinness phoned Shearson Lehman Brothers, Inc., the investment banking firm that held the account, and instructed it to liquidate the account. The same day, Shearson sold the securities that comprised the account, converting them to cash. The next morning, March 18, McGinness died. And that afternoon, Shearson issued a check payable to "Marie McGinness and Chester Graves, JTROS" and sent it to McGinness' address. *Id.* at 494. The check arrived on March 19 and Shearson closed the account that day. The personal representative of McGinness' estate petitioned for determination of ownership of the account proceeds and the trial court, finding

that McGinness had terminated the joint account before her death, awarded the proceeds to McGinness' estate. Graves appealed.

[16]  We held first that McGinness' phone call "could not serve to terminate the joint account[.]" *Id.* at 495. Indiana Code section 32-17-11-19 provides that the form of ownership of a joint account may only be altered by a signed, written order given to the financial institution during the party's lifetime. Because McGinness' phone call did not meet these requirements, "the joint account, with the right of survivorship in favor of Graves, was in existence at the time of [her] death." *Id.* The estate argued that even if the phone call was insufficient to terminate the account, it did withdraw all the funds. Therefore, the estate asserted there were no sums remaining on deposit when McGinness died and Graves had no right to the funds previously withdrawn. But because the check was issued jointly to McGinness and Graves, we held the right of survivorship between the parties was maintained. *Id.* Accordingly, we reversed the trial court, holding that "the proceeds of the account became Graves' property at the time of McGinness' death." *Id.*

[17]  As in *Graves*, Martin did not take the appropriate steps to change the form of the account when he withdrew the funds.[6] Indiana Code section 32-17-11-19 states that the "provisions of section 18 . . . as to rights of survivorship are determined

---

[6] Solomon PR argues that, pursuant to the account application, telephone redemption is allowed. *See* App. of Appellant, Vol. 2 at 26. Although it may be true that *Guggenheim* would allow redemption by telephone, that has no bearing on the statutory requirements for changing the form of an account.

by the form of the account at the death of a party." The fact that Martin withdrew all the funds does not overcome the presumption that Lindsey, named a joint owner with rights of survivorship when the account was created, was the intended recipient of the proceeds in the account because there is no dispute regarding the fact that Martin did not communicate to Guggenheim in writing that his intent had changed. *See In re Estate of Banko*, 622 N.E.2d at 480. Thus, when Martin died, the form of the account was a joint account with rights of survivorship in Lindsey.

[18] The fact that the balance on the joint account had been zeroed out by Guggenheim and the funds moved into a check redemption account in Guggenheim's name does not have the importance Solomon PR would ascribe. Solomon PR points to Santay's supplemental affidavit which stated that the check redemption account was in MUFG's name and "was separate and distinct from the Joint Account" and argues the check redemption account was not a "multiple party account" with a right of survivorship and therefore, there is no basis "on which to find there were sums on deposit in the Joint Account at the time of [Martin's] death or that there was a right of survivorship between [Martin] and [Lindsey] in Guggenheim's Check Redemption Account." Amended Br. of Appellant at 17. Essentially, Solomon PR argues that immediately upon Guggenheim moving the funds out of the joint account into the check redemption account, the funds became Guggenheim's (as named owner of the check redemption account) and lost all their previous characteristics. But we cannot agree that bank processes have any bearing on

the ownership of clearly marked funds from Martin and Lindsey's joint account. That the money has to be held somewhere after it is withdrawn and before it becomes available to the account owner does not change the fact that the money is the account owner's. Whatever Martin's intention when he withdrew the money, it was certainly not for Guggenheim to become, even briefly, the owner of the funds. What if the check had gotten lost in the mail? What if Martin was still alive when the check arrived but changed his mind and tore it up? Under Solomon PR's theory, the money would remain in Guggenheim's check redemption account and accrue only to Guggenheim's benefit, not to Lindsey's *or* Martin's. Unless and until the check was cashed, the funds represented by the check retained their original characteristic as sums on deposit in a joint account with rights of survivorship.

[19] Solomon PR concedes the facts of *Graves* are "strikingly similar" but argues there is a "material exception." Amended Br. of Appellant at 13. In *Graves*, the check was issued to ""Marie McGinness *and* Chester Graves, *JTROS*" but here, the check was issued to "Paul J. Martin *or* Lia J. Lindsey." Solomon PR argues that these distinctions compel a different result because survivorship rights in the check are not specified here.

[20] We see no meaningful distinction to be made on the basis of how the checks were made out in *Graves* versus this case. The account from which the funds were drawn was a joint account with rights of survivorship. Guggenheim issued a check in the same manner the joint account was titled from the time it was opened – Santay's affidavit states the joint account was established and

titled in the names of "Paul J. Martin or Lia J. Lindsey" and the titling was never changed. *See* App. of Appellant, Vol. 2 at 78-79. "Paul J. Martin or Lia J. Lindsey" appears on all the account statements in the record. *See id.* at 74, 76, 95; App. of Appellant, Vol. 3 at 26. If Guggenheim had drawn a check made out to "X or Y with rights of survivorship" from an account that was *not* a joint account, it would not have conferred survivorship rights. Nor does drawing a check made out to "X or Y" on a joint account strip an account of its survivorship rights.[7]

[21] The joint account or its proceeds, here represented by the check, remained jointly owned by Martin and Lindsey with the right of survivorship when Martin died. Pursuant to section 18, the proceeds of the joint account became Lindsey's property at the time of Martin's death as a matter of law.[8]

---

[7] It is true, as Solomon PR notes, that *Graves* stated the "joint account or its proceeds, the check, remained jointly owned by McGinness and Graves with the right of survivorship as provided by *express written instruments* (the deposit agreement and the check)." 625 N.E.2d at 495 (emphasis added). *Graves* cites now-Indiana Code section 32-17-11-29 and *Hughes v. Hughes*, 171 Ind. App. 255, 356 N.E.2d 225 (1976), *trans. denied*, in support of the importance of the written instruments. However, Indiana Code section 32-17-11-29 specifically does *not* apply to accounts and *Hughes* concerned real estate. Thus, we do not believe the authorities cited in *Graves* compel the check to specifically reference the right of survivorship.

[8] Although not argued by the parties or addressed by the trial court, we note that Lindsey might also have been entitled to summary judgment based on Indiana Code section 32-17-11-17. Section 17 creates a presumption that, during the lifetime of the parties, "the proceeds in a joint account belong to the joint tenants in the proportion that they contributed to the account." *Rollings v. Smith*, 716 N.E.2d 502, 505 (Ind. Ct. App. 1999). The presumption can be rebutted, however, by "clear and convincing evidence of a different intent" – intent of the sole contributor to give, deliver, and irrevocably surrender control of the funds to the other joint owner. Ind. Code § 32-17-11-17(a); *Rogers v. Rogers*, 437 N.E.2d 92, 96 (Ind. Ct. App. 1982). Solomon's argument presupposes that because Martin contributed 100% of the funds in the account, he was entitled pursuant to section 17 to do as he wished with 100% of the funds in the account during his lifetime and had only intended to create a valid disposition at death. However, Lindsey designated evidence showing he intended her to have access to the funds in the joint account "anytime" and therefore, may have rebutted

# Conclusion

[22] As a matter of law, Lindsey is entitled to the proceeds of the check and the trial court's grant of summary judgment to her is affirmed.

[23] Affirmed.

Crone, J., and Brown, J., concur.

---

the section 17 presumption which would mean she was entitled to the funds not only at Martin's death but also during his lifetime.